| 56 | 369 |
| 59 | 342 |
| 56 | 369 |
| 64 | 549 |
| 56 | 369 |
| 68 | 383 |

------<••>------

## MARIA D. CARD vs. ENOS FOOT.

New Haven Co., Dec. T., 1887. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

In a suit to recover the proceeds of the sale of a certain railroad bond which the plaintiff claimed to have placed in the defendant's hands, it became important for the plaintiff to show that before the transaction she had several bonds of that character. The defendant denied that she ever had them, and claimed that her whole story was a fabrication, and a recent one. Held—

1. That evidence was admissible that, before any controversy had arisen, she had, on delivering a package to a friend for safe keeping, told her it contained her bonds.

2. Also evidence that, four years before, she had told a witness that she had such bonds.

3. And that it made no difference that the defendant was not present in either case.

The plaintiff had testified that she had earned the money invested in the bonds in large part in her business as a milliner and that she had a high class of customers. She was asked the names of her customers, and in answering was allowed to refresh her recollection by referring to a list of them made by her son upon her dictation. Held to be no error.

[Argued December 7th—decided December 30th, 1887.]

ACTION to recover a balance claimed to be due upon the sale of a railroad bond by the defendant for the plaintiff; brought to the Court of Common Pleas in New Haven County, and tried to the jury, upon a general denial, before *Deming, J.* Verdict for the plaintiff and appeal by the defendant for errors in the ruling of the court. The case is sufficiently stated in the opinion.

*W. L. Bennett*, for the appellant.

*C. S. Hamilton*, for the appellee.

PARK, C. J. On the trial of this case in the court below the plaintiff offered evidence to prove, and claimed to have proved, that in the spring of 1884 she put $1,060 into the hands of the defendant for him to purchase for her a first mortgage bond of $1000 of the Metropolitan Elevated Railroad Company; that he purchased the bond and delivered it to her and that she afterwards returned it to him for safe keeping; that in April, 1885, she purchased a house in the city of New Haven and was under the necessity of selling the bond to raise a part of the purchase money, and that she requested the defendant to sell it for her; that he advised her not to sell, as the bonds of the company were rising in value, but to get a loan and pledge the bond as collateral; that the defendant did this for her and brought her $892.75, which she paid on her purchase; that in July, 1885, the defendant sold the bond for $1077.50 without the July coupon of $30; and that he has ever since refused, though often requested, to pay the balance of the money left in his hands.

The defendant denied all the claims of the plaintiff as to the purchase and sale of the bond, and as to the delivery to him of any money for such a purpose, and claimed that her entire story was a fabrication.

The plaintiff, for the purpose of helping out her case, offered evidence to prove that this bond was one of four which she had owned and which had been purchased for her by the defendant, the other three having been purchased in the year 1879; that at that time she put into the defendant's hands $3160 for the purchase of those three bonds, all of which were of the same character and amount as the one first referred to, and that he purchased and delivered them to her; that she put them in a tin case which he furnished her for the purpose and which she kept in her sleeping apartment; that in December, 1883, a fire took place in the

house in the night and that she fled to the house of Mrs. Lyon, a neighbor; that the fire was soon extinguished, and that she returned and found the bonds had not been injured; and that she took them to the house of Mrs. Lyon and delivered the tin case containing them to Lena Lyon, the daughter of Mrs. Lyon. The defendant denied all knowledge of or connection with any such bonds on his part, and it thus became a question bearing materially upon the whole case whether the plaintiff ever had any such bonds and any such dealings with the defendant with regard to them, or whether her whole story was a fabrication.

When the plaintiff had stated that she had thus delivered the package to Miss Lyon for safe keeping, she was asked by her counsel—"What did you ask her to do with it?" to which she replied—"I asked her to keep it safely." Her counsel then asked her "What direction did you give her in regard to keeping it?"—to which she answered—"I asked her to put it in a safe place for me, for they were my bonds."

To both of these questions and the answers the defendant objected and especially to her declaration in the last answer that they were her bonds. The court admitted the evidence, and this raises the first question in the case.

We think the court committed no error in this ruling. The evidence was offered to show that the plaintiff's conduct, long before any controversy had arisen with regard to the matter, was in entire keeping with the possession of the bonds to which she had testified. There was nothing in the appearance of the package tending to show that it contained the bonds or any thing of value, while her conduct and speech were a natural indication that it did contain valuable bonds. If, as she claims, it contained the bonds in question, it would have been very remarkable and contrary to human experience if she had not informed Miss Lyon of its value and of the importance of keeping it safely, while if the package contained nothing of value no adequate motive can be conceived for her caution with regard to its safe keeping or her statement as to its containing her bonds. Indeed no

adequate motive can be conceived for her getting it from the place where she had kept it and bringing it to Mrs. Lyon's house. If it had appeared that she had delivered it to Miss Lyon without any suggestion of its value or of its containing her bonds, the fact would have been at once seized upon by the opposing counsel as showing that the package contained nothing of value and that her whole testimony with regard to it was false.

The plaintiff's remark that the package contained her bonds was admissible rather as an act than as a statement and wholly on the ground, as we have before remarked, that it was a natural act. If it were to be taken as a statement, its value might depend upon her veracity, but if regarded as an act the question of veracity does not arise. The question was whether she had those bonds. Her conduct before any controversy arose becomes an important indication of the real fact. Thus, suppose she had hired a drawer in a safe deposit vault and had placed a package in it, there being no pretence that she had any other bonds than these, her conduct, even if no word had been spoken, would be admissible in evidence as strengthening the probability that she had the bonds. Now if, in hiring the drawer, she had remarked that she wanted it to keep some railroad bonds in, the remark would be admissible as a part of her conduct in the matter; not as a declaration purporting to be truthful, but as a natural act in the circumstances. It would be of the same precise nature as the act of hiring the drawer without any declaration as to the use to be made of it. Just so, if she had put the bonds in her tax-list, no controversy having then arisen, that fact would operate in her favor, but only as a natural act on her part, not as a declaration independent of the act.

This view of the matter disposes of the objection made by the defendant's counsel, that he was not present to hear what was said. There was clearly no more necessity that the defendant should have been present and have heard her remark, than it would have been in the case supposed that he should have been present and seen her hire the drawer

in the safe deposit vault. Neither act had any relation to him. The principle upon which declarations made by a party to a controversy are admissible when made in the presence of the other party, and inadmissible otherwise, is that when heard by him he has the opportunity to contradict them and his failure to do so is equivalent to an admission of the truth of the statement of his adversary. But here there was nothing which he had at the time any interest in denying, while, regarding the whole as simply constituting an act on the part of the plaintiff, it was not a matter calling for admission or denial.

There is another ground upon which this evidence became pertinent and admissible. The defendant claimed that the suit was fraudulently brought to extort money from him, and that the plaintiff's story was not only an entire fabrication, but was one of recent origin. Of course it was admissible on her part to show that it was not of recent origin and nothing was more pertinent than this evidence upon that matter.

But the plaintiff further, for the purpose of showing that her claim to the ownership of the bonds was not of recent origin, offered one Charles H. Card as a witness, who testified that about four years before the trial and before any controversy with regard to the matter had arisen, she stated to him that she had some Elevated Railroad Company bonds. This evidence the court received against the objection of the defendant's counsel.

There was no error in this ruling. The question was— when did the plaintiff first claim to own the bonds? The fact could not be proved otherwise than by her declarations. The defendant claimed that she had never pretended to own them till recently. This could be met only by showing that she had claimed to own them at an earlier time, and the fact that she had made the claim four years before became one of increased weight in her favor in meeting the claim of the defendant. And it is of no consequence here, as in the case we have before considered, that the defendant was not present when the statement was made.

The counsel for the defendant cross-examined the plaintiff with regard to the sources from which she derived the money which she claimed to have invested in the bonds, and she stated in reply to his questions that she carried on the business of a milliner and dress-maker in the city of New Haven and that her customers were of the wealthy class, who paid her good prices for her work. On her re-direct examination she was asked to state the names of her customers. In doing so she used a memorandum for the purpose of refreshing her recollection, which was written by her son at her dictation. The defendant's counsel objected to any use of the memorandum, but the court admitted it.

There was no error in this ruling. A witness may always refresh his memory by referring to a memorandum, where he does in fact testify from his memory thus refreshed. It is no objection to the memorandum here that the names were written by her son, for he did it in her presence and upon her dictation, so that it was her memorandum and not his.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.