[No. 10039.   Department One.  .March 21, 1912.]

JAMES LAWN *et al.*, *Respondents*, v. M. PRAGER, *Appellant*.[1]

EVIDENCE—DOCUMENTARY EVIDENCE—ACCOUNT BOOKS—ENTRIES. A book of account kept by general contractors · is admissible in evidence, where it appears that the items were entered from information and data acquired from blank slips filled out by their employees and turned in each week showing the time and kind of work done by each, and checked by the foreman, the foreman testified from personal knowledge to the correctness of the data, and the person making the entry in the book testified to the correctness of the original data and the record thereof in the book.

CHADWICK, J., dissents.

Appeal from a judgment of the superior court for King county, Robert H. Lindsay, Esq., judge *pro tempore*, entered July 11, 1911, on findings in favor of the plaintiffs, in an action to foreclose mechanics' liens.   Affirmed.

*Leopold M. Stern* (*J. W. Russell*, of counsel), for appellant.

*Frank S. Griffith* and *E. H. Kohlhase*, for respondents.

PARKER, J.—This is an action to foreclose a lien claimed by the plaintiffs upon the interest of the defendant in a certain store building, and the land on which it is situated, in Seattle, for extra' work and for material furnished in remodeling the building under a contract therefor.   A decree of foreclosure was rendered in favor of the plaintiffs, from which the defendant has appealed.

It is first contended by counsel for appellant that the trial court erred in admitting in evidence a certain book of account containing a record purporting to show the amount of extra work performed upon the building by respondents' employees in excess of that required by their original contract for the remodeling of the building.   This book was kept for

[1]Reported in 121 Pac. 466.

that express purpose.   All of the items were entered therein
by respondent Lawn in his own handwriting, from informa-
tion and data acquired by him as follows:  At the beginning
of each week each employee was furnished with a blank slip
upon which he kept a record of his time and also a record of
the time he worked at each particular kind of work.   Re-
spondents' foreman also kept a record of the time of each em-
ployee in the same manner.   At the end of each week, each
employee turned his slip over to the foreman, after signing
it, and the foreman then compared the data thereon with his
own record for the purpose of verification.   The slips were
then turned over by the foreman to respondent Lawn, who
paid the employees their wages based upon this data.   The
wages of the employee did not depend upon the record of the
kind of work he had performed during the week, but simply
upon his total time.   The record of the kind of work was
kept in order to enable respondents to segregate the amount
of time consumed in the performance of each class of work.
When this data was furnished to respondent Lawn at the end
of each week, he entered in this book the amount of work, in
hours, and the nature of the work, performed by each em-
ployee during the week upon the building, not included in the
original contract of remodeling it.   That is, the extra work
performed over and above the contract.   The purpose of this
record was to enable respondents to make a proper charge
against appellant for the extra work, and according to
Lawn's testimony this data was sufficient for that purpose.
These entries cover a period of several weeks, and were made in
this manner in accordance with a general custom and course
of business pursued by respondents in keeping their accounts
of extra work performed by their employees upon this and
other contracts which they had, they being general building
contractors.   The foreman testified to the correctness of the
slips turned in by him to respondent Lawn, though at the
time of the trial the slips kept by himself had been lost.   The
data contained in these slips was all within his personal

knowledge; that is, they were merely memoranda made by himself of facts within his own knowledge. So his testimony went to the extent of showing that he furnished to respondent Lawn correct data. Respondent Lawn testified to the correctness of the recording of that data by him in this book. Hence, we have no hearsay evidence here. Under the circumstances shown, we think this book was admissible in evidence. While it required the testimony of both of these witnesses to verify the correctness of the original data and the correctness of the record thereof in this book, so far as the admissibility of this book is concerned, it is in principle the same as if we had but one witness with knowledge of the original transactions and also knowledge that they were correctly recorded in this book. The correctness of this view finds support in the statement of Professor Wigmore, in his work on Evidence, vol. 2, § 1530, where he remarks as follows:

"There can be no doubt that the general principle of testimonial evidence (*ante*, § 657) should apply here as elsewhere, namely, that the person whose statement is received as testimony should speak from personal observation or knowledge. This principle has often been invoked in excluding entries made by a person who had no personal knowledge of the supposed facts recorded.

"But does this principle necessarily exclude all entries made by persons not having personal knowledge of the facts entered? May not this lack of personal knowledge on the part of the entrant be supplemented by the personal knowledge of some other person whose knowledge is in fact represented in the entry? In other words, if the element of personal knowledge can somehow be adequately supplied by a *third person*, is it material that the *entrant himself did not have this personal knowledge?* In order to work out this problem, it is necessary to keep in mind the results already established in connection with the doctrine about memoranda of past recollection (*ante*, § 751). It was there noticed that a memorandum whose correctness was established by composite testimony could be used; for example, if S has made a written memorandum of a transaction done by him, and has given the writing to B, who has copied it and destroyed the original,

then if S swears the original to have been accurately made, and if B swears the copy to be correct, the copy produced is thus by their joint testimony rendered an accurate record of the transaction, although B alone has no personal knowledge of the transaction and although S alone does not know the copy to be correct."

See, also, 17 Cyc. 392, 394.

Our attention is called to *Union Elec. Co. v. Seattle Theater Co.*, 18 Wash. 213, 51 Pac. 367, in support of appellant's contentions. A reading of that case will show, however, that the book entries sought to be introduced in evidence were made from data, the correctness of which was not vouched for by any witness nor by any correct legal method whatever. They were not made by one who had knowledge of the original transaction, nor made from data which had been collected or noted by any one in the due course of business.

Other contentions made in behalf of appellant involve nothing but questions of fact. The evidence is very voluminous, and the items involved are also numerous. To analyze these contentions here would only be to recite and argue upon a great mass of details, to no useful purpose. We have read all of the evidence and are convinced therefrom that the trial court was fully warranted in rendering its decree of foreclosure. The judgment is affirmed.

DUNBAR, C. J., GOSE, and CROW, JJ., concur.

CHADWICK, J. (dissenting)—Without reviewing the testimony, for it will serve no purpose, I desire to say that I am not convinced that the items charged as extras are in fact extras. I believe the disputed items were understood by the parties to be included in the original contract. I therefore dissent.