[No. 676-2.    Division Two.    November 3, 1972.]

ROBERT H. LARSON, *as Guardian, Appellant,* v. PUYALLUP SCHOOL DISTRICT No. 3 *et al., Respondents.*

*Gale P. Hilyer, Jr.,* for appellant.

*F. Ross Burgess, William L. Holder,* and *William R. Hickman (of Reed, McClure, Moceri & Thonn, P.S.),* for respondents.

PEARSON, J.—This is an action for personal injuries and damages brought by the guardian ad litem of Neal Kaznakoff, a minor, against the defendants, Pierce County and

Puyallup School District No. 3. Neal, who was age 4 years at the time of the accident, was struck by a school bus owned and operated by the Puyallup School District, as he attempted to cross 55th Avenue N.E. near its intersection with 13th Street N.E. in rural Pierce County. The accident occurred at about 2:15 p.m. on April 9, 1970. The county was sued on the theory that certain of its road equipment was illegally parked on the driving portion of 55th Avenue, thus blocking the view of the child from the driver of the bus.

A jury returned a verdict in favor of both defendants, and from the judgment of dismissal subsequently entered plaintiff appeals. Five major assignments of error are made. (1) Plaintiff contends that there was circumstantial evidence from which the jury could conclude that the child was struck in the unmarked crosswalk at the intersection. Consequently, it was error for the trial court to refuse to allow argument on this issue. (2) The trial court should have directed a verdict against either or both defendants. In this regard, the trial court instructed the jury that the county employees were negligent as a matter of law for parking on the driving portion of 55th Avenue in violation of RCW 46.61.560. However, issues of proximate causation and the negligence of the school district were submitted to the jury. (3) It is claimed that a new trial should have been granted because when the jury found in favor of the county, it was inconsistent and illogical for the jury to have also found in favor of the school district. (4) The trial court erred in restricting opinion evidence of plaintiff's medical expert to reasonable medical probabilities concerning the future ramifications of the child's injuries. (5) Certain instructions relating to plaintiff's theories of recovery should have been given. It is our conclusion that the verdict and judgment of dismissal should be affirmed.

A brief resume of the facts is in order. The area of the accident was rural, rather than urban. Fifty-fifth Avenue is a 2-lane, 20-foot wide, blacktop street running generally east to west. The speed limit is 50 miles per hour. Near

the accident site, 13th Street forms a "T" intersection running into 55th Avenue from the north. Thirteenth Street is also a 2-lane, asphalt street of approximately 20-foot width. There are no marked crosswalks in the area.

Approximately 5 minutes before the accident, a Pierce County dump truck and belt loader were brought to a stop by two county road maintenance employees in the vicinity of the southwest corner of the 13th Street intersection. The drivers were part of a crew of county employees who were engaged in cleaning accumulated grass from the ditches and shoulders of 55th Avenue and adjoining streets. The rest of the crew and equipment, consisting of two other dumptrucks and a grader, had not yet arrived from the area just previously completed about three blocks to the west of this intersection. As parked, the two vehicles substantially obstructed the eastbound lane of 55th Avenue because of the narrow (2-foot) shoulder along the south side of the pavement. There were no flagmen or signalmen present at the time. The loader was parked nearest the intersection, with the dump truck immediately to the west, and a narrow space between.

The three witnesses who observed the actions of the child prior to the accident testified that he ran in a northwesterly direction from between the two parked county vehicles immediately into the path of the westbound school bus. The bus driver, Bonnie Wiggins, testified that as she approached the intersection she was driving at approximately 35 miles per hour. She slowed this speed to 30 miles per hour or below when she observed the two county vehicles. She also observed the child as she approached the intersection area. At that time, he was walking west on a grass area, some distance south of the southerly shoulder of 55th Avenue. She lost sight of him as he disappeared behind the loader. She next observed him running into the street toward the bus from between the two county vehicles. She applied the brakes and swerved the bus into the ditch on the north side of 55th Avenue, but was unsuccessful in her attempt to avoid the accident.

Frank Sankwich, the dump truck driver, who was seated in the truck, saw the child for the first time as he ran in front of the truck toward the center of the street. Sankwich tried to signal the approaching bus by waving at the driver.

Edward F. Martin, an employee of the Mountain View Edgewood Water Company, was the only other witness to observe the events leading up to the accident. He had parked a water company utility vehicle on 13th Street and had alighted from the vehicle and was standing in the street facing the intersection. He was waiting for the county road crews to clean the ditches. His job was to protect his company's water lines in the area being cleaned by the county. Martin located the county's belt loader some 15 or 20 feet west of the unmarked crosswalk area and the dump truck was immediately to the west of the loader. The witness saw the child in the street near the left front of the dump truck. He observed the bus braking hard in the intersection. He also had observed the child a few moments earlier well off the highway in a private driveway immediately to the south of the intersection.

We first consider plaintiff's contention that the evidence was sufficient to allow the jury to determine whether or not the minor child was struck in the unmarked crosswalk on the westerly side of 13th Street. We have made a careful search of the record. There is no credible evidence to support that contention. All of the witnesses called by plaintiff who observed the location of the county vehicles at the time of the accident positioned the county loader to the west of the unmarked crosswalk[1] which would parallel a prolongation of the west curb line of 13th Street. All witnesses who were present at the time of the accident observed the child proceed into the street from between the loader and the dump truck.

The state patrol officer, who arrived at the scene some 15

[1]RCW 46.04.160 provides: " 'Crosswalk' means the portion of the roadway between the intersection area and a prolongation or connection of the farthest sidewalk line or in the event there are no sidewalks then between the intersection area and a line ten feet therefrom, except as modified by a marked crosswalk."

to 20 minutes after the accident, testified that his investigation of the accident located the impact point outside of the crosswalk area. His investigation further disclosed that the child had been running in a diagonal, northwesterly direction, away from the unmarked crosswalk area. It is true that a diagram of the scene which the state trooper had drawn for plaintiff's attorney from memory several months after the accident, and which was allowed in evidence over objection by defendants, might permit an inference that the child had entered the street in the crosswalk area. On that diagram one county vehicle (presumably the loader) was placed directly opposite where 13th Street entered 55th Avenue. However, there was testimony that other county vehicles had been moved into the area prior to the arrival of the officer. His diagram shows three county vehicles instead of the two that were, in fact, present when the accident occurred. The diagram was not "to scale" and according to the officer was not intended to position the county vehicles accurately. For this reason, the diagram was illustrative, and did not furnish substantive evidence on the issue. It would not constitute substantial credible evidence that the child was struck in the unmarked crosswalk.

Certain mathematical evidence is also urged as a basis for allowing an inference that the child must have been in the unmarked crosswalk area at the time he was struck. Without detailing that evidence, it may be briefly summarized as follows. One witness to the accident observed the bus braking hard as it entered the intersection. An expert testified as to normal reaction time and stopping distance of a bus under the circumstances existing. Plaintiff urges that the inference from this testimony was that the bus driver must have observed the child before reaching the intersection (because of the reaction time) and at 30 miles per hour the bus would have been able to stop before striking the child if the impact occurred west of the unmarked crosswalk area. The trouble with this hypothesis is that the witness who saw the bus braking as it entered the

intersection placed the child well outside of the unmarked crosswalk area at the time he observed him in the street. We, therefore, do not find a reasonable inference from the stopping distance argument that the child was struck in the crosswalk. Furthermore, as we view the context of the stopping distance testimony, it was offered to show that the bus driver should have been able to stop in the exercise of reasonable care before striking the child; it was not offered for the purpose of establishing the point of impact. It would, in our opinion, be totally unreliable to locate the impact point. Before a party is entitled to an instruction on a particular theory of liability and to argue thereon, there must be substantial evidence to support the theory. *Adams v. State*, 71 Wn.2d 414, 429 P.2d 109 (1967). We do not find substantial evidence that the child was struck in an unmarked crosswalk.

Was it error to deny plaintiff a directed verdict against the school district? No statutory violation by the bus driver was established. She drove well within the speed limit as she approached the intersection. The only issue as to her liability was whether or not she exercised reasonable care after discovering the presence of the child near the highway. That theory was properly submitted to the jury by instruction 17.[2]

---

[2]Instruction 17 states: "You are instructed that a statute of this state provides that the driver of a motor vehicle shall exercise due care to avoid colliding with any pedestrian upon any road and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child upon a roadway.

"The phrases 'due care' and 'proper precaution' in this statute mean that a driver must exercise reasonable care to avoid striking any child he sees, or in the exercise of reasonable care he should see, either on the roadway, or in proximity thereto.

" 'Reasonable care' in relation to a child means that a driver is bound to anticipate the ordinary behavior of a child having in mind the apparent age of the child, his proximity to the roadway and his apparent activity. The driver must realize that a child will not exercise the same degree of care as an adult.

"It is for you the jury to determine what is 'reasonable care' for a driver to take under all of the circumstances you find from the evidence to have existed at the time of this incident, and whether or not a driver of the school bus exercised reasonable care in relation to this child."

742

■ ■ The court is permitted to determine negligence as a matter of law only where (1) the standard of care fixed is the same under all circumstances, and its measure is defined by law, and (2) where the facts are undisputed and there is but one reasonable inference therefrom. *See Leach v. Weiss,* 2 Wn. App. 437, 467 P.2d 894 (1970). Considering plaintiff's motion for directed verdict, the defendants were entitled to have the evidence interpreted most strongly in their favor. *Leach v. Weiss, supra.*

When these standards are applied to the conduct of the bus driver, in our view it was for the jury to determine whether or not Mrs. Wiggins acted reasonably after discovering the presence of the child. *Carraway v. Johnson,* 63 Wn.2d 212, 386 P.2d 420 (1963).

■ Whether or not Mrs. Wiggins could have successfully avoided the accident but for the presence of the county vehicles, was also a question of fact for the jury and it was not error for the trial court to submit the proximate cause issue to the jury with reference to the county's negligence.[3] The evidence would permit several reasonable inferences in regard to factual causation. (*See Leach v. Weiss, supra,* where it was held to be error for the trial court to determine proximate cause as a matter of law where the conduct of more than one defendant was involved and where the facts were not undisputed nor the inferences plain.)

The first reasonable inference from the evidence was that since the bus driver observed the child prior to his sudden appearance on the roadway, and since she observed him disappear behind the loader, the presence of the loader was not a cause of the accident at all, but was merely a condition of it—the sole cause of the accident consisting of the

[3]The county vigorously objects to and cross-appeals from the trial court's ruling that the county was negligent per se for the alleged violation of the parking statute (RCW 46.61.560). Its contention is that road maintenance personnel are excused from the provisions of that statute by virtue of RCW 46.61.030. Because of our disposition of the appeal, it is unnecessary to consider the question raised by the cross-appeal.

bus driver's failure to anticipate that the child might run into the roadway.

The second reasonable inference from the evidence was that the actions of the child as he disappeared from Mrs. Wiggins' view did not suggest to her as a reasonably prudent driver that the child intended to cross the road. Consequently, the presence of the "illegally parked" county vehicle prevented her from observing the child's conduct until too late to avoid the accident. According to this inference, the sole proximate cause of the accident was the presence of the "illegally parked" vehicle.

Third, the jury could reasonably have decided that a combination of the presence of the county vehicle and the failure of the bus driver to exercise reasonable care after discovering the presence of the child proximately caused the accident. *See Leach v. Weiss, supra.*

Fourth, the jury reasonably could have found, as they unquestionably did find, that the injuries to the child were solely caused by his own spontaneous and unpredictable behavior in suddenly darting into the street and the accident was unavoidable as to both defendants. *See Carraway v. Johnson, supra.*

With the presence of these conflicting inferences from the evidence, it would have been error for the trial court to decide the issue of proximate cause as a matter of law as to the defendants.

The above analysis also disposes of plaintiff's contention that the verdict of the jury was inconsistent or illogical. Even though the child's age prevents application of the contributory negligence doctrine, it does not follow that negligence and proximate cause have been established against either defendant. As stated above, the jury could reasonably have ascertained that because of the child's own actions, the accident was unavoidable as to the defendants. *Carraway v. Johnson, supra.*

It is unnecessary to consider plaintiff's claim that error was committed by excluding certain medical opinion evidence concerning the future ramification of the minor

child's injury. Since the verdict did not establish the defendants' liability, the error, if any, was harmless. *Stuart v. Consolidated Foods Corp.*, 6 Wn. App. 841, 496 P.2d 527 (1972). For the same reason, we decline to consider the alleged errors pertaining to the court's instructions on damages.

Lastly, plaintiff challenges the refusal of the trial court to give four proposed instructions pertaining to liability. One was an instruction directing a verdict against the school district. That question has previously been considered and rejected. Another was properly refused as it was premised upon a "crosswalk" theory of liability which has also been considered and rejected.

Plaintiff proposed an instruction seeking to define the duty of the county employees toward the minor child. Another proposed instruction purported to define the duty of a vehicle driver toward a child of tender years. The subjects of both of these instructions were included in two separate instructions given by the court, to which no objection was made nor exception taken by plaintiff. The proposed instructions as they sought to define the duty of the respective defendants were inconsistent with the definitions given by the trial court.

Under these circumstances, we hold that the instructions given by the trial court became the law of the case and plaintiff may not now urge as error the refusal of the court to give the two proposed instructions covering those same issues. *See Stark v. Allis-Chalmers*, 2 Wn. App. 399, 467 P.2d 854 (1970), and *Stuart v. Consolidated Foods Corp., supra.* To preserve error, if any, in the refusal of the trial court to give the two proposed instructions, plaintiff should have apprised the court as to the legal insufficiency of the instructions selected by the trial court, in addition to informing the court of the legal sufficiency and necessity of those proposed.

Judgment affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.