[No. 2585-1. Division One. February 9, 1976.]

MANUEL I. VENTOZA, ET AL, *Respondents*, v. GEORGE "MICK" ANDERSON, ET AL, *Appellants*, JOHN B. CLARK, ET AL, *Respondents*.

Charles F. Diesen, for appellants.

Norman, Magee & Loreen, John B. Magee, Piehler, Allerdice & Boyack, and M. Wayne Boyack, for respondents.

[As amended by order of the Court of Appeals April 27, 1976.]

CALLOW, J.—This is a timber trespass case brought under RCW 64.12.030. The applicable words of the statute are:

Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, . . . without lawful authority, in an action by such person . . . against the person committing such trespasses . . ., if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.

The plaintiffs, Manuel and LaVerne Ventoza, his wife, owners of the real property trespassed upon, brought suit against the defendants George and Bonnie Anderson, husband and wife, and John and Betty Clark, husband and wife.

The Ventozas owned a 40-acre tract of real estate near Duvall, King County, Washington. The four corners of this property were marked with corner markers and a single strand of barbed wire surrounded the acreage. The Ventoza property is bordered on the east by a similarly undeveloped 120-acre tract owned by one Baroh. It is on a plateau from which the Baroh property slopes away to the east. Prior to the logging in question, there were no access roads to the

Ventoza property. The respective positions of the properties and the area of trespass were reflected upon an exhibit as follows:

The defendant George Anderson had entered into an oral contract to log all the standing timber on the land owned by Baroh. Anderson was to pay Baroh $20 per thousand board feet on the fir logs cut and was to receive the hemlock and alder on the property in exchange for building a road. He commenced logging in the northernmost 40-acre tract of Baroh and worked south. When the logging operation reached the middle 40 acres, an employee of Anderson felled the trees in the vicinity of the Ventoza property. As Anderson moved the logging operation to the south, the defendant John Clark was engaged to yard the trees that had been cut by Anderson's employee. All of the timber from both the Baroh and Ventoza property went to the mill in the name of Anderson. Anderson telephoned Manuel Ventoza in late 1969 or early 1970 regarding the purchase of some of his timber. During this conversation, Anderson indicated that a trespass had already occurred on the east line of the Ventoza property. Ventoza examined the area and discovered that approximately 16 acres of fir and hemlock had been logged off of an irregularly shaped area on the east side of his property. When the parties could not agree upon a settlement of the matter, suit was commenced and the cause was tried to the jury. The jury answered special interrogatories and rendered its verdict as follows:

We, the jury, find for the plaintiffs in the sum of $7,200.00, and against only defendants Anderson.

Yes, the defendant, George M. Anderson, or those for whom he was legally responsible, trespassed upon the property owned by the plaintiffs and destroyed or removed therefrom trees belonging to the plaintiffs.

No, the trespass was not casual or involuntary, nor did the defendant George M. Anderson have probable cause to believe that he was authorized to log the trees on the land on which the trespass was committed.

No, the defendant John B. Clark, or those for whom he was legally responsible, did not trespass upon the property owned by the plaintiffs and destroy or remove therefrom trees belonging to the plaintiffs.

The issues raised by the defendants Anderson on appeal concern the admission into evidence of a "stumpage count" made by Ventoza and its use as the basis for the testimony of an expert witness as to volume and value, instructions given and refused, and the allowance of interest upon the amount of the jury verdict from the alleged date of the trespass to the date of judgment.

The plaintiffs Ventoza cross-appeal, claiming that the court improperly instructed the jury on vicarious liability and nondelegable duty, and erred in limiting the plaintiffs' evidence to the market value of stumpage at the time of the trespass rather than permitting the jury to consider market value of the stumpage at times before and after the trespass.

1 and 2. *An exhibit may be admitted as a past recollection recorded when all the qualifications for admission are met and the facts reflected therein were within the personal knowledge of the witness, accumulated with his direct participation, under his supervision and control, and recorded by him.*

The plaintiff Manuel Ventoza, his two sons and a retired timber cruiser conducted a count of the stumps within the area of the trespass some months after the trees had been cut, but while Anderson's equipment was still on the Baroh property. When the exhibit was first offered for admission into evidence, it was objected to on the ground that it was self-serving and no foundation had been laid for its admission. Later, Anderson asserted that Ventoza could not testify to the stumpage count without the additional testimony of the two other participants since the plaintiff's two sons did part of the measuring of the stumps with a tape measure and then called the information regarding the width and the species of the cut tree to the plaintiff, who recorded the information on a timber logging sheet. Anderson's objection was that since the plaintiff did not do all of the species identification and tree measuring himself, the memorandum should not have been admitted as a past recollection recorded. Ventoza asserts that he conducted the stump count at the request of the defendants, the stump count

was conducted under his supervision, all of the recording was done by him, and therefore the exhibit was admissible. When the exhibit was offered again later in the trial, and at that time admitted, the ground of objection asserted by the defendants was that the count was not taken reasonably near to the time of the trespass.

■ In order for an exhibit to be admitted as a past recollection recorded, the following conditions must be shown to exist:

1. The witness has no independent recollection of the facts recited in the writing;

2. The writing itself does not bring back to personal memory any distinct recollection of the facts recorded;

3. The writing was prepared concurrently, or almost concurrently, with the facts it purports to record;

4. The witness knew that the memorandum was true when written;

5. The memorandum or writing was an accurate, complete record of what transpired; and

6. The witness had personal knowledge of the facts recorded. *State v. Benson*, 58 Wn.2d 490, 364 P.2d 220 (1961); *State v. Gross*, 31 Wn.2d 202, 196 P.2d 297 (1948); *Cooley v. Ben Paris Sporting Goods & Recreation Co.*, 5 Wn.2d 415, 105 P.2d 820, 107 P.2d 347 (1940); *Preston v. Metropolitan Life Ins. Co.*, 198 Wash. 157, 87 P.2d 475 (1939); *Lawn v. Prager*, 67 Wash. 568, 121 P. 466 (1912); 5 R. Meisenholder, Wash. Prac. Evidence § 501 (1965). *See also Benjamin v. Havens, Inc.*, 60 Wn.2d 196, 373 P.2d 109 (1962); 3 J. Wigmore, *Evidence* § 751 (Chadbourn rev. 1970); Annot., 82 A.L.R.2d 473 (1962).

■ We find that the foundation laid for the admission of the exhibit established the existence of circumstances which supported the credibility of the exhibit and satisfied these conditions. The plaintiff substantiated that he had educated himself on the method of making such a stump count and that he was a direct participant in all phases of the information-gathering activity, being personally involved on the site in each step of the preparation of the document. We recognize the danger inherent in permitting

one who has gathered data with the help of others to vouch for the correctness of the data on his own without requiring that the other participants be also subject to cross-examination upon their knowledge, methods, and veracity.[1] Further, when damages are to be proven in a treble damage action, an accurate estimation is needed since any error will be multiplied threefold. However, when the foundation that is laid shows that the testifying witness participated in, supervised and controlled the mechanics of the data gathering, and that the assimilation of each item was personally observed and immediately recorded by the testifying witness, then the trial court in its discretion may admit the exhibit without requiring that each of the other partici-

---

[1]As observed by Professor Meisenholder:

"Ordinarily the witness who has made the memorandum will be able to testify to the fulfillment of the conditions for admissibility under the instant rule, but in some instances he may have given the data recorded to a second person who prepared the memorandum or in other instances he may only have recorded data given him by a second person. If the witness did not prepare the memorandum or supervise its preparation or read it as soon as it was written he cannot testify that it was true when written. On the other hand if he prepared the memorandum but recorded facts related to him by another he would not have personal knowledge of the facts recorded. In the above instances one person with first-hand knowledge, the informer, may have supplied the data to a second person, the recorder, who recorded the data in the memorandum. It is then possible to meet the requirements of the instant rule by the testimony of both the informer and recorder. For this purpose the recorder would be required to testify that he had no personal knowledge of the data recorded, that the informer told him the data recorded, that he has no independent recollection of what the informer told him, but that he knows that he recorded accurately what the informer told him. The informer would be required to testify in effect that he had personal knowledge of the data recorded, that he stated the data to the recorder who recorded it, that he has now no independent recollection of the data, that he informed the recorder truthfully concerning the data, and that the data he communicated were an accurate and complete record of the facts given the recorder. The testimony of both could also establish the proper time relation between the time the facts occurred and the time of the recording of the facts. In a similar manner it is possible to fulfill the requirements of the rule when three persons were involved in the ascertaining, communicating, and recording of facts in a memorandum or other writing." (Footnote omitted.) 5 R. Meisenholder, Wash. Prac. Evidence § 501, at 483-84 (1965).

pants corroborate the testifying witness.[2] The other participants in the gathering of the data could only have given cumulative testimony. The defendant was free to call the others as witnesses had he chosen to do so. The essential witness, who was aware of the truth or falsity of the document, was called by the plaintiff. This was sufficient under the circumstances to permit admission of the exhibit.

When, as here, the witness, though unable to refresh his memory from the document, can nevertheless state that he directly participated in the gathering of the information and knew of his own knowledge that the facts on the writing were correct at the time of their recording, the document is admissible as a past recollection recorded. *See Card v. Foot*, 56 Conn. 369, 15 A. 371 (1887); 4 B. Jones, *Evidence* § 27:5, at 260 (6th ed. S. Gard 1972).

The condition that the record is to have been made within the same time frame as the happening of the event recorded seeks to minimize error which might have occurred either because of changes brought about between the occurrence and the time the items in question are recorded, or by the dimming of human memory if the recordation is not made forthwith following the occurrence. *See Bergman v. Shoudy*, 9 Wash. 331, 37 P. 453 (1894); Fed. R. Evidence 803(5); 4 B. Jones, *Evidence* §§ 27:7-27:9 (6th ed. S. Gard 1972). The record was compiled as soon as practicable. The evidence showed that the stumps counted were those recently cut when the trespass was discovered. The recording was done concurrently with the gathering of the data. The exhibit was admissible as a past recollection recorded under the exception to the hearsay rule.

■ An expert witness in forestry testified as to the

[2]*See McGarry v. United States*, 388 F.2d 862 (1st Cir. 1967), *cert. denied*, 394 U.S. 921 (1969); *Curtis v. Bradley*, 65 Conn. 99, 31 A. 591 (1894); *Rules of Evidence for United States Courts and Magistrates*, Advisory Committee's Note to rule 803(5), 56 F.R.D. 183, at 306-07 (1973); *McCormick's Law of Evidence* § 303 (2d ed. E. Cleary 1972); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(5)[01], at 803-138 (1975); Morgan, *Hearsay and Preserved Memory*, 40 Harv. L. Rev. 712 (1927).

value of the trees cut. His conclusions were based upon the stumpage count and his own on-site observation. He excluded from consideration stumps which had diameters of less than 12 inches, and it was his estimation that the stand of timber logged from the Ventoza property contained between 180,000 and 200,000 board feet. He testified that the stumpage price for the Ventoza trees would be between $35 and $40 per thousand board feet, and that the total stumpage value of the timber taken was between $6,300 and $8,000. The testimony of the plaintiffs' witness could be believed and the testimony of the defendants' witness on value disregarded. *See Ross v. Norton*, 36 Wn.2d 835, 221 P.2d 476 (1950). We uphold the ruling of the trial judge in the admission of the exhibit and the expert testimony based upon it.

3. *The measure of damages for a timber trespass is treble the "stumpage value" at the time of the trespass.*

The trial court instructed the jury:

It is the duty of the court to instruct you as to the measure of damages. By instructing you on damages, the court does not mean to suggest for which party your verdict should be rendered. If your verdict is for the plaintiffs as to either or both defendants, then you must determine the value of the trees cut or removed from the plaintiffs' property as they were standing on the property before being cut—commonly known as the "stumpage" value—as of the time of the alleged trespass.

The defendants' position is that this instruction on damages, standing alone, wrongfully tells the jury that

the plaintiff was entitled to collect from the defendants the stumpage value of trees which were cut and removed as well as the value of trees cut and left on the property.

■ "Stumpage" is the value of timber as it stands before it is cut or, as otherwise defined, the compensation to be paid by a purchaser for standing timber to be cut and removed. *Barclay v. United States*, 333 F.2d 847 (Ct. Cl. 1964); *Ciapusci v. Clark*, 12 Cal. App. 44, 106 P. 436 (1909); *Neidlinger v. Mobley*, 76 Ga. App. 599, 46 S.E.2d 747

(1948); *Gordon v. Grand Rapids & I.R. Co.*, 103 Mich. 379, 61 N.W. 549 (1894).

■ The timber trespass statute, RCW 64.12.030, contemplates that the plaintiff whose merchantable trees are taken by the intentional, voluntary trespasser, or by one who had no cause to believe the land was his own, shall receive three times the compensatory measure of damages, which is "what the trees would be worth on a sale in the condition in which they were at the time of the taking . . ." *Bailey v. Hayden*, 65 Wash. 57, 59, 117 P. 720 (1911). *See Grays Harbor County v. Bay City Lumber Co.*, 47 Wn.2d 879, 289 P.2d 975 (1955). The statute provides for the trebling of the amount of damages assessed whether the tree is cut down, girdled or carried off. The statutory purpose is to protect the right of the owner to use or preserve his trees as he sees fit, and not force compensation upon him when undamaged, growing trees were what he would have possessed but for the willful intrusion of the trespasser. When an owner's trees have been destroyed as growing timber, the statute then allows damages in excess of the true measure of compensation without diminution or offset. A voluntary trespasser cannot show that he has benefited the landowner by turning the standing timber into logs. *Smith v. Shiflett*, 66 Wn.2d 462, 403 P.2d 364 (1965); *Grays Harbor County v. Bay City Lumber Co., supra.* The punitive purpose of the timber trespass statute is to deter intentional trespass. When recovery is sought and awarded under a punitive statute, the wrongdoer is not entitled to an offset against the damages awarded against him. *Rose v. Galbraith Motor Co.*, 51 Wn.2d 31, 314 P.2d 924 (1957). The instruction given was appropriate under the evidence. The action was pursued on the basis of the statute and merchantable timber had been cut down.

4 and 5. *The burden is not on a landowner to endeavor to prevent or lessen damages being caused by a willful timber trespasser. A landowner need not sell cut or damaged timber on his property to reduce the damages caused by the timber trespass of another.*

The defendant proposed instructions which would have placed a responsibility upon the plaintiff to minimize damages and to realize such value from the damaged trees as they might have as a reduction of his actual damages. We have stated that when a landowner's growing timber is cut by a willful trespasser, the measure of damages to the owner is the stumpage value of the trees involved, so long as their value as living trees has been destroyed. The wrongdoer is not entitled to gain because of his tortious conduct. 52 Am. Jur. 2d *Logs and Timber* § 129, at 98 (1970). The damaged owner, who has innocently suffered a loss because of the wrongful acts of an intentional trespasser, should neither be put to the travail of protecting against further damage, nor the onus of restoring the land to the extent possible to lessen his damages. A purpose of the treble damage statute is to provide "a rough measure of compensation for future damages not generally ascertainable." *Harold v. Toomey*, 92 Wash. 297, 298, 158 P. 986 (1916), cited with approval in *Mullally v. Parks*, 29 Wn.2d 899, 909, 190 P.2d 107 (1948).

The "stumpage value" measure of damages for trees cut down, girdled, injured or carried off is a pragmatic, though imprecise measure. Such a rule under the treble damage statute recognizes that when a logger trespasses upon the land of another and cuts trees, damage is not confined to the "stumpage value" of the severed trees, but may also extend to the loss of growing trees which are not yet of merchantable size, to the presence of logging roads and loading sites unwanted by the landowner, to possible future erosion, to the pollution of fish breeding streams, and to numerous other injuries to the land which need not be specified as compensable items of damage. When a landowner elects to pursue a recovery under the treble damage statute, he is entitled to the benefit of the statute without reduction of the damages heretofore defined as "stumpage value." RCW 64.12.030 contemplates this result when it permits the trebling of damage done to trees whether they are cut down, girdled, injured or carried off. The net result

to the landowner may be substantially different if his trees are cut down and carried off, or cut down and left on the premises. However, the policy of the courts is to submit the easily understood and easily proven measure of "stumpage value" to the trier of the facts. The policy rejects placing the burden of mitigation and the complications of exact measurement upon the wronged owner by requiring the weighing of possible benefits against the loss of the land-owner's trees. The nature of punitive damages is that they exceed the true measure of compensation. *See Grays Harbor County v. Bay City Lumber Co., supra.* When an injured landowner elects to pursue his remedy under RCW 64.12.030, he is entitled to the benefits of that remedy and bound by its limitations. *Gunstone v. Chicago, M. & P. S. Ry.,* 79 Wash. 629, 140 P. 907 (1914).

We note further, without detraction from the preceding premise, that the burden of proving the feasibility of mitigating damages and the amount by which they could have been mitigated, is upon the one who caused the injury. *Reeder v. Harmeling,* 75 Wn.2d 499, 451 P.2d 920 (1969); *McCurdy v. Union Pac. R.R.,* 68 Wn.2d 457, 413 P.2d 617 (1966); *Burr v. Clark,* 30 Wn.2d 149, 190 P.2d 769 (1948); *Golob v. George S. May Int'l Co.,* 2 Wn. App. 499, 468 P.2d 707 (1970). The defendant claims that it was possible for a time after the trespass was discovered to have sold the logs that remained on the premises to a mill. The evidence establishes neither the length of time that purported possibility was open to the plaintiff, nor the value of the logs that could have been sold. It would have been improper to have given an instruction on mitigation, in any event, in view of the absence of evidence that there was time available to reduce the damage and with evidence lacking on the amount by which damages could have been reduced. *Bartlett v. Hantover,* 84 Wn.2d 426, 526 P.2d 1217 (1974); *Larson v. Puyallup School Dist. 3,* 7 Wn. App. 736, 502 P.2d 1258 (1972).

6. *One who contracts with an independent contractor for*

*the performance of work generally is not liable for the trespass of the independent contractor.*

The defendant objected to an instruction given by the court which stated:

> One who engages an independent contractor to per-form logging operations is not liable to landowners for the trespasses of the independent contractor or those employed by the independent contractor, whether as agents or independent contractors themselves, unless the trespass is the result of the advice or direction of the principal, or unless the principal has notice of the trespass and fails to interfere.

The argument is made that the use of the words "unless the principal has notice of the trespass and fails to interfere" was improper as there was no evidence that Anderson had notice of any trespass by Clark or anyone else. The defendant Anderson also argues that such an instruction would unjustly punish an innocent employer if the engaged independent contractor willfully trespassed.

We find that the record includes testimony from which the jury could conclude that Anderson was aware that the persons with whom he was dealing were taking timber from the plaintiffs' land. Evidence was present to support the instruction insofar as the challenge raised is concerned.

We disagree that the instruction would permit punishment of an innocent employer if the employed independent contractor trespassed. The two exceptions to nonliability that are specified by the instruction impose liability upon an employer for negligent direction of the independent contractor (Restatement (Second) of Torts § 410 (1965)), or for failing to act upon becoming aware that the independent contractor is about to harm a third party in the performance of the employment. Restatement (Second) of Torts § 414A (1965). *See also Cleveland, C., C. & St. L. Ry. v. Simpson,* 182 Ind. 693, 104 N.E. 301, 108 N.E. 9 (1914); *Lamb v. South Unit Jehovah's Witnesses,* 232 Minn. 259, 45 N.W.2d 403, 33 A.L.R.2d 1 (1950); *Wright v. Tudor City*

*Twelfth Unit, Inc.*, 276 N.Y. 303, 12 N.E.2d 307, 115 A.L.R. 962 (1938). The instruction was consistent with the general rule expressed in *Bill v. Gattavara*, 24 Wn.2d 819, 167 P.2d 434 (1946), which held that an employer is not liable for the torts of an independent contractor or his servants. *See also* Restatement (Second) of Torts § 409 (1965). It was also consistent with the further holding expressed in *Bill v. Gattavara, supra,* that where a trespass is committed on the property of another by the advice or direction of a defendant, the relationship between the immediate agent of the wrong and the person sought to be charged is unimportant. Further, where one hires another to do certain work as an independent contractor in an area where the employer has the right to be, that employer may not stand silently by if he observes the contractor trespassing into an adjacent area. An employer is not entitled to nonliability for the acts of an independent contractor in such circumstances. A trespass will have occurred because of the culpable misfeasance of the employer in the first instance, and because of culpable nonfeasance in the second instance. We find no error in the giving of the instruction.

7. *The evidence supports that the trespass upon the land of the plaintiffs was the intentional trespass of the defendant Anderson.*

The defendant Anderson argues that the judgment was improper, claiming that it must have included evidence of cutting for which the defendant Anderson was not liable. This is primarily a factual argument which has been answered by the jury contrary to the position of the defendant Anderson. The burden of proving that a trespass was casual or involuntary is upon the defendant once the fact of trespass and the damages caused thereby have been shown by the plaintiff. RCW 64.12.040; *Smith v. Shiflett*, 66 Wn.2d 462, 403 P.2d 364 (1965); *Blake v. Grant,* 65 Wn.2d 410, 397 P.2d 843 (1964); *Longview Fibre Co. v. Roberts*, 2 Wn. App. 480, 470 P.2d 222 (1970). Assuming for the sake of argument that the trespass was partially caused by others, the burden of proving the liability of each joint tort-

feasor fell upon the defendant Anderson if he was to reduce his liability by claiming that the total damage was properly apportionable between himself and other tort-feasors. *Fugere v. Pierce*, 5 Wn. App. 592, 490 P.2d 132 (1971); Restatement (Second) of Torts § 433B (1965). Evidence was not submitted regarding the extent of the trespass on the Ventoza property that was attributable to others, the amount and species of timber allegedly cut by others, or its value. In addition, Anderson did not submit proposed instructions regarding the issue of mitigation under RCW 64.12.040, or on the issue of apportionment of damages. Where instructions have not been proposed by an appellant upon an issue, he may not complain concerning the absence thereof. *Goodner v. Chicago, M., St. P. & P. R.R.*, 61 Wn.2d 12, 377 P.2d 231 (1962).

8. *Prejudgment interest is not allowable upon the jury award in a timber trespass case brought under RCW 64.12.030.*

 The trial judge added interest at the rate of 6 percent per annum from June 15, 1970, the date of the trespass, to October 9, 1973, the date of judgment, upon the $7,200 compensatory jury award. The defendant objects to the addition of this prejudgment interest. In *Rayonier, Inc. v. Polson*, 400 F.2d 909 (9th Cir. 1968), it was pointed out that the Washington treble damage statute is penal in character and must be strictly construed. The court held that when recovery is sought under the punitive treble damage statute, which contains no provision for interest, the statute cannot be extended by implication to provide for interest upon any portion of the award. The opinion stands for the proposition that when a plaintiff elects to seek recovery under the treble damage section, only three times the value of the trees wrongfully cut may be recovered, and interest may not be granted upon either the compensatory or the punitive portion of the award. Interest is generally disallowed when recourse upon a punitive statute is sought. *See also Blake v. Grant*, 65 Wn.2d 410, 397 P.2d 843 (1964); *Grays Harbor County v. Bay City Lumber Co.*, 47 Wn.2d

879, 289 P.2d 975 (1955); 22 Am. Jur. 2d *Damages* §§ 179, 267 (1965). The trial court should not have awarded prejudgment interest to the plaintiffs, and the judgment must be reduced by the amount thereof.

The plaintiffs cross-appealed in regard to certain instructions given by the trial court, but only in the event that the cause was remanded for a new trial upon the appeal of the defendant Anderson. Since we affirm the judgment of the trial court, except as modified herein in regard to the allowance of prejudgment interest, the issues raised by the cross-appeal are no longer disputed. The cause is remanded for the entry of judgment consistent herewith.

WILLIAMS, C.J., and FARRIS, J., concur.

Petition for rehearing denied May 24, 1976.

Review denied by Supreme Court August 31, 1976.