[No. 3091–2. Division Two. January 2, 1979.]

SANDRA L. PEARCE, *Respondent,* v. G. R. KIRK COMPANY, *Appellant.*

324

*Joseph F. Quinn* and *Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern,* for appellant.

*Thomas C. O'Hare* and *Smith, Redman & O'Hare,* for respondent.

PEARSON, C.J.—The G. R. Kirk Company appeals from a money judgment in favor of Sandra L. Pearce in her action based upon RCW 64.12.030, the timber trespass statute. The Kirk Company does not challenge the trial court's finding that its employees, while cutting Christmas trees for commercial purposes in November of 1975, trespassed onto the adjoining Pearce property and cut down and removed 426 of her douglas fir Christmas trees. The sole issue in this appeal is the proper measure of damages.

The trial court's damage award was based upon plaintiff's testimony that she was able to sell 57 trees remaining

on her property for $221 locally in Mason County. Deducting $50 as costs of sale, her net proceeds were $171, or $3 per tree. As authorized by the statute,[1] the court trebled this figure pursuant to its finding that the trespass was willful, and multiplied $9 per tree x 426 = $3,834. After deducting another $155.60 in costs which plaintiff would have incurred had she sold the subject trees in Seattle as she originally planned, the court gave judgment for $3,678.40. We affirm, but modify the damage award.

RCW 64.12.030 was first enacted in the nineteenth century. It is a penal statute designed to punish a willful trespasser by trebling the damages against him. *See Gardner v. Lovegren*, 27 Wash. 356, 67 P. 615 (1902).

In 1937, the legislature enacted the statute now designated RCW 79.40.070, apparently to address a problem of Christmas tree poaching on state lands. That statute was amended in 1955 to provide, in present form, that one who enters upon state or private lands without permission and cuts Christmas trees "shall be liable" to the owner in the amount of $1 per tree. The damage figure rises to $3 per tree in the event the owner finds it necessary to bring suit to recover his losses.[2]

---

[1]RCW 64.12.030 provides as follows:
    Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, or on the street or highway in front of any person's house, village, town or city lot, or cultivated grounds, or on the commons or public grounds of any village, town or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town or city against the person committing such trespasses or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.
    Treble damages will be awarded under this statute if the trespass was willful, *i.e.*, not casual or involuntary. *Blake v. Grant*, 65 Wn.2d 410, 397 P.2d 843 (1964); *Ventoza v. Anderson*, 14 Wn. App. 882, 545 P.2d 1219 (1976). See RCW 64.12.040. Kirk admits its cutting of plaintiff's trees in this case was "willful" under that definition, although it did not intend to trespass.

[2]RCW 79.40.070 provides as follows:
    "It shall be unlawful for any person to enter upon any of the state lands, including all land under the jurisdiction of the state forest board, or upon any

Defendant contends that RCW 79.40.070, the Christmas tree statute, provides the exclusive remedy for plaintiff, as the owner of Christmas trees on private land. The trial judge agreed in his oral decision that this statute established liability. Because the trial court believed that the $1 and $3 damage figures provided in 1937 were unrelated to the reasonable value of Christmas trees today, however, the court calculated treble damages under RCW 64.12.030, as prayed for in the complaint.

Defendant's argument is based on the rule of statutory construction that, where a general statute and a subsequent special statute relate to the same subject, the terms of the special statute must prevail. *State v. Walls*, 81 Wn.2d 618, 503 P.2d 1068 (1972). Furthermore, when the legislature in 1955 amended RCW 79.40.070 to broaden its coverage from state lands to private lands and private owners, it did not change the amount of recoverable damages.

It is clear that RCW 64.12.030 and the more recent RCW 79.40.070 are in pari materia. Both relate to the cutting and carrying off of trees on private or public property. The older statute is aimed at girdling or otherwise injuring all kinds of trees and shrubs without lawful authority, while the newer statute specifically is designed to prevent cutting and removing evergreen trees for commercial purposes, or otherwise injuring such Christmas trees.

■ General and specific statutes in pari materia should be construed together and harmonized, if possible. *Buell v. McGee*, 9 Wn.2d 84, 113 P.2d 522 (1941); 2A C. Sands, *Statutes and Statutory Construction* § 51.05 (4th ed.

private land without the permission of the owner thereof and to cut, break or remove therefrom for commercial purposes any evergreen trees, commonly known as Christmas trees, including fir, hemlock, spruce, and pine trees. Any person cutting, breaking or removing or causing to be cut, broken or removed, or who cuts down, cuts off, breaks, tops, or destroys any of such Christmas trees shall be liable to the state, or to the private owner thereof, for payment for such trees at a price of one dollar each if payment is made immediately upon demand. Should it be necessary to institute civil action to recover the value of such trees, the state in the case of state lands, or the owner in case of private lands, may exact treble damages on the basis of three dollars per tree for each tree so cut or removed."

1973). If they conflict irreconcilably, the more specific stat- ute will prevail, unless it appears the legislature intended to make the general statute controlling. *Wark v. Washington Nat'l Guard*, 87 Wn.2d 864, 867, 557 P.2d 844 (1976).

Here, while the latter statute does provide a specific remedy to aggrieved owners of Christmas trees, nothing appears in the legislative history or on the face of that enactment to suggest that it was intended to provide the exclusive remedy for removal of or damage to Christmas trees.

An owner of land containing Christmas trees, particularly one who does not ordinarily sell his trees, might find it difficult to establish damages through diminution of value to his land or on a theory of lost profits from the potential sale of the missing trees. As a result, he may elect to proceed under RCW 79.40.070, which provides a statutory measure of damages of $3 in the event of a suit. On the other hand, we see no reason an owner of damaged or removed evergreen trees cannot elect to proceed under the general timber trespass statute and seek to treble whatever actual damages he can prove. Our construction of these statutes accomplishes a sensible, harmonious result—rather than the absurd result that might prevail if RCW 79.40.070 were held to be the exclusive remedy for Christmas tree growers, *i.e.*, that a wrongdoer could unlawfully remove a large, carefully grown ornamental tree from a commercial farm or lot and satisfy the damage by paying $1 on demand. *See Yakima First Baptist Homes, Inc. v. Gray*, 82 Wn.2d 295, 510 P.2d 243 (1973). We hold that plaintiff properly brought suit under RCW 64.12.030.[3]

---

[3] We observe further that RCW 79.40.080, which was enacted in 1937 together with .070, expresses the following legislative intent:

> Construction . . . RCW 79.40.070 is not intended to repeal or modify any of the provisions of existing statutes providing penalties for the unlawful removal of timber from state lands.

Such an "existing statute" in 1937 was Rem. Rev. Stat., § 939—now RCW 64.12- .030—which includes the unlawful removal of timber from the lands of subdivisions of state government, including "any village, town or city" or county (as in *Grays Harbor County v. Bay City Lumber Co.*, 47 Wn.2d 879, 289 P.2d 975

The next issue is the proper measure of damages under that statute, which traditionally has been that of "stumpage value." *Grays Harbor County v. Bay City Lumber Co.,* 47 Wn.2d 879, 289 P.2d 975 (1955); *Bailey v. Hayden,* 65 Wash. 57, 117 P. 720 (1911). "Stumpage" is the value of timber as it stands before it is cut, or put another way, the amount a purchaser would pay for standing timber to be cut and removed. *Ventoza v. Anderson,* 14 Wn. App. 882, 891, 545 P.2d 1219 (1976). As the court in *Ventoza* recognized, because the stumpage value per se may not fully compensate the tree owner for such things as the loss of trees of less than merchantable size, the carving out of unwanted logging roads, or possible soil erosion and stream pollution, the statute allows the stumpage value to be trebled, without mitigation by the trespasser. *Ventoza,* at 893–94.

■ In this case, stumpage value—even if trebled—is an inadequate measure of damages and would not serve the statutory purpose of deterring trespass. *Ventoza v. Anderson, supra.* We observe that the statute itself does not use the term "stumpage value" or limit a plaintiff to that remedy. It is well established that where the wrong consists in the removal or destruction of some addition, fixture, or part of real property, the loss may be calculated as the diminution, if any, in the value of the premises, or as the value of the parts severed or destroyed, "and that valuation should be adopted which will prove most beneficial to the injured party, as he is entitled to the benefit of his property intact." *Park v. Northport Smelting & Refining Co.,* 47 Wash. 597, 599, 92 P. 442 (1907); *DeYoung v. Swenson,* 6 Wn. App. 452, 454, 493 P.2d 1247 (1972).

Sandra Pearce purchased the land with the intention that her father would harvest the Christmas trees and they

(1955)). We believe that by enacting RCW 79.40.080, the legislature intended to make clear that other pertinent statutes remained intact and to restate the viability of RCW 79.40.070; this answers the argument that .070 was intended to supersede RCW 64.12.030 where Christmas trees are involved.

would take them to Seattle and sell them at retail. She did not intend simply to sell to woodcutters the rights to cut them. If she had, she could have expected to receive only the stumpage value from the trees as they reached harvestable size. Instead, she expected to derive retail profits based upon market value. The stumpage value of the Christmas trees cut on the Pearce property was established as about $1.50 for a bale of 4 trees, or 37.5 cents per tree. Even trebled, the stumpage figure is far less than actual retail value, and is an inadequate measure of relief. *See* D. Dobbs, *Law of Remedies* § 5.2, at 323 (1973); *Crofoot Lumber, Inc. v. Ford,* 191 Cal. App. 2d 238, 12 Cal. Rptr. 639 (1961). Such a remedy would clearly not satisfy the legislative purpose of RCW 64.12.030.

Plaintiff testified that she sold 57 remaining trees in 1975 for approximately $3 each, or about 50 cents a foot. It was suggested that those remaining trees were of poorer quality than the ones mistakenly cut by Kirk, which may have sold for $1 per foot or more, but the evidence is equivocal on this point. Nevertheless, plaintiff's father along with an experienced Christmas tree cutter made a count of the number of tree stumps left by Kirk and estimated from the stumps that Kirk had cut 9 trees of 2 feet; 63 of 4 feet; 216 of 6 feet; 125 of 8 feet; 12 of 10 feet; and 1 of 12 feet, for a total of 426 trees. At a minimum of 50 cents a foot, these missing trees could all have been sold at retail for $1,349. It would be unfair to assume, however, that Sandra Pearce could have sold all 426 trees, because the 57 Christmas trees she sold in 1975 were from a total of 65 remaining trees she offered for sale; she actually sold 88 percent of those trees from her land. Assuming, therefore, that she could have sold 88 percent of the 426 trees removed by Kirk, we compute that the total of her lost opportunity to market these trees was $1,187.12.

Under RCW 64.12.030, we hold that for a plaintiff who intended to market trees personally and realize a retail profit, the proper measure of damages to be trebled is the proven market value of those trees. That value is not to be

reduced or mitigated by a wrongdoer under a punitive statute such as this, bearing in mind that

> [t]he statutory purpose is to protect the right of the owner to use or preserve his trees as he sees fit, and not force compensation upon him when undamaged, growing trees were what he would have possessed but for the willful intrusion of the trespasser.

*Ventoza v. Anderson, supra* at 892.

The judgment is affirmed, but modified to award Sandra Pearce $1,187.12 x 3 = $3,561.36, plus allowable costs in the trial court and in this appeal.

REED and SOULE, JJ., concur.

Reconsideration denied January 30, 1979.

Review granted by Supreme Court May 25, 1979.