
FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 23 2018
CHIEF JUSTICE

This opinion was filed for record

at ___8am___ on _August 23, 2018_

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

LAWRENCE HILL, ADAM WISE, and ROBERT MILLER, on their own behalves and on behalf of all persons similarly situated,

      Respondents/Cross-Petitioners,

v.

GARDA CL NORTHWEST, INC., f/k/a AT SYSTEMS, INC. a Washington Corporation,

      Petitioner/Cross-Respondent.

No. 94593-4

EN BANC

Filed **AUG 2 3 2018**

GORDON McCLOUD, J.—Garda CL Northwest Inc. operates an armored transportation service and requires its drivers and messengers to remain constantly vigilant while working. Specifically, Garda requires those employees to maintain vigilance when they take lunch breaks while on the job. The Court of Appeals ruled that this constant vigilance policy deprived the employees of a meaningful meal period, as guaranteed under WAC 296-126-092. That court also ruled that this policy violated the Washington Minimum Wage Act (MWA), chapter 49.46 RCW.

Under Washington law, an employer who violates the MWA owes its employees double exemplary damages unless certain exceptions apply. RCW 49.52.050, .070. One exception is for wage claims over which the employer and employees have a "'bona fide'" or "'fairly debatable'" dispute, meaning a dispute that is both objectively and subjectively reasonable. *E.g.*, *Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr.*, 175 Wn.2d 822, 834, 287 P.3d 516 (2012) (internal quotation marks omitted) (quoting *Morgan v. Kingen*, 166 Wn.2d 526, 534, 210 P.3d 995 (2009); *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 161, 961 P.2d 371 (1998)). The first question in this case is whether Garda carried its burden[1] of showing a fairly debatable dispute over whether the employees waived their state law right to meal periods in their collective bargaining agreements (CBAs). Answer & Cross-Pet. for Review at 18. The second question is whether the plaintiffs can recover both prejudgment interest under RCW 19.52.010 and double exemplary damages under RCW 49.52.070 for the same wage violation. *Id.* at 18-20.

We hold that Garda has failed to prove a bona fide dispute based on waiver. We also hold that aggrieved workers may recover both double exemplary damages under RCW 49.52.070 and prejudgment interest under RCW 19.52.010 for the same

---

[1] *Wash. State Nurses Ass'n*, 175 Wn.2d at 834 ("The burden falls on the employer to show the bona fide dispute exception applies." (citing *Schilling*, 136 Wn.2d at 165)).

wage violation. We therefore reverse and remand to the Court of Appeals for further proceedings consistent with this opinion.

FACTS AND PROCEDURAL BACKGROUND

Garda operates an armored transportation service delivering currency and other valuables throughout Washington State. Typically, two Garda employees, a driver and a messenger, guard these valuables during transport. To ensure the safety of those employees and their cargo, Garda requires its drivers and messengers to remain vigilant at all times—even when they take rest breaks and meal periods.[2] Opening Br. of Appellant Garda at 7 ("acknowledg[ing] that because of the nature of the work—transporting Liability [(valuables)] in an armored truck and carrying firearms—its crew must exercise some level of alertness at all times outside a Garda facility").

Plaintiffs Lawrence Hill, Adam Wise, and Robert Miller are former Garda drivers and messengers. They argue that Garda's policy of prohibiting drivers and messengers from taking vigilance-free rest breaks and meal periods violates WAC

---

[2] Garda disputed whether all drivers and messengers really followed that policy. Clerk's Papers (CP) at 3172-3302 (containing logs of certain employees' social media access). The trial court resolved that dispute by ruling that some employees may have engaged in personal activities during their breaks, but the "[e]mployees were never relieved of the obligations to guard the truck and/or the liability and to maintain constant vigilance." CP at 3812.

296-126-092 (guaranteeing workers rest breaks and meal periods) and RCW 49.46.020 of the MWA (entitling employees to compensation for all hours worked). Clerk's Papers (CP) at 2753-61, 3304-08. They filed a lawsuit on behalf of themselves and a class of similarly situated Washington drivers and messengers for compensation for these missed rest breaks and meal periods. CP at 3-8. They requested compensatory damages under RCW 49.46.040, exemplary double damages under RCW 49.52.070, and prejudgment interest under RCW 19.52.010.

The trial court certified the plaintiff class (hereafter "Plaintiffs"). CP at 932-34. It then ruled that WAC 296-126-092 granted Plaintiffs the right to vigilance-free rest breaks and meal periods, CP at 3352-53, and that this was made especially clear by the 2011 decision in *Pellino v. Brink's Inc.*, 164 Wn. App. 668, 267 P.3d 383 (2011). CP at 3810-11. *Pellino* held that a similar constant vigilance policy used by one of Garda's competitors, Brink's Inc., violated WAC 296-126-092. *Pellino*, 164 Wn. App. at 694-96. It therefore granted summary judgment to the Plaintiffs on the issue of liability. CP at 3352-54. A bench trial followed on the issue of damages and double damages.

The Plaintiffs sought double damages pursuant to RCW 49.52.050 and .070. Those statutes say that employers who intentionally underpay employees must pay exemplary double damages. Garda opposed double damages. Garda argued that

4

there was a bona fide dispute over the workers' entitlement to vigilance-free rest breaks and meal periods for four reasons[3] and that such a dispute constitutes a defense to double damages under RCW 49.52.050 and .070. Garda also argued that even if there were no bona fide dispute, the workers knowingly submitted to the violation—another statutory defense to double damages. CP at 3447-48.

The trial court rejected Garda's arguments and granted the Plaintiffs prejudgment interest and double damages for their missed rest breaks and meal periods, starting two weeks from the date that *Pellino* was issued. CP at 3810, 3821. The trial court held that Garda did not have the requisite intent to deprive the workers of their rest breaks and meal periods earlier because prior to *Pellino* it was fairly debatable whether WAC 296-126-092 required vigilance-free rest breaks and meal periods. CP at 3811.

Garda appealed several issues concerning liability.[4] It also appealed the award of double damages but only as to the meal period violations (not the rest break

---

[3] Garda argued it had a bona fide dispute based on (1) federal preemption under the Federal Aviation Administration Authorization Act of 1994 (FAAAA), 49 U.S.C. § 14501(c)(1); (2) federal preemption under the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a); (3) individual waiver based on the acknowledgments that each employee signed, agreeing to be bound by the terms of their respective CBA; and (4) collective waiver based on the Plaintiffs' respective CBAs. CP at 3437, 3444, discussed *infra* at 9-10.

[4] Garda appealed liability under WAC 296-126-092, raising questions regarding (1) the meaning of WAC 296-126-092 and whether it required vigilance-free rest breaks and

5

violations). Lastly, Garda appealed the Plaintiffs' recovery of both prejudgment interest and double damages for the same violations.

The Court of Appeals affirmed the trial court's rulings on liability. *Hill v. Garda CL Nw., Inc.*, 198 Wn. App. 326, 343-59, 394 P.3d 390 (2017). But it reversed the trial court's award of double damages for meal period violations and reversed portions of the prejudgment interest award regarding rest break violations because the Plaintiffs also recovered double damages for those violations. *Id.* at 363-66. The Court of Appeals explained that Garda had established its statutory, bona fide dispute defense because the law was not that clear about whether meal periods could be waived in a CBA. *Id.* at 363. The Court of Appeals did not address whether Garda had established the bona fide dispute defense on the other issues Garda claimed were debatable: Federal Aviation Administration Authorization Act of 1994 (FAAAA) preemption, Labor Management Relations Act of 1947 (LMRA) preemption and individual waiver. *Id.* at 363-64. Nor did it address Garda's statutory defense that the workers willfully submitted to the violation. *Id.* at 364.

Garda petitioned this court for review and the Plaintiffs cross-petitioned. We denied Garda's petition but granted Plaintiffs' cross-petition on the issues of double

---

meal periods, (2) the waivability of meal period rights by CBAs, and (3) federal preemption under the FAAAA, the LMRA, and section 7 of the National Labor Relations Act of 1935, 29 U.S.C. § 157.

damages and prejudgment interest. *Hill v. Garda CL Nw., Inc.*, 189 Wn.2d 1016, 403 P.3d 839 (2017).

## ANALYSIS

I. Garda Failed To Carry Its Burden of Showing the Statutory Bona Fide Dispute Defense to Double Damages Based on Waiver

A. Under RCW 49.52.052 and .070, an Employer Is Liable for Double Damages for Wage Violations Unless It Carries the Burden of Showing That a Statutory Defense Applied

The trial court's decision that Garda violated WAC 296-126-092 and is liable to the Plaintiffs for wage violations under the MWA is not before this court. The question for us relates solely to Garda's liability for double exemplary damages under RCW 49.52.050 and .070.

Under those statutes, an employer who "pay[s] any employee a lower wage than the wage such employer is obligated to pay such employee" "shall be liable . . . to judgment for twice the amount of the wages unlawfully . . . withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees" if the employer withheld the wages (1) "[w]ilfully and [(2)] with intent to deprive the employee of any part of his or her wages" and (3) the employee did not "knowingly submit[] to such violations." RCW 49.52.050(2), .070.

The standard for proving willfulness is low—our cases hold that an employer's failure to pay will be deemed willful unless it was a result of

""'"carelessness or err[or]."'" *Wash. State Nurses Ass'n*, 175 Wn.2d at 834 (quoting *Morgan*, 166 Wn.2d at 534 (quoting *Schilling*, 136 Wn.2d at 160)); *see also* RCW 49.52.080 (presuming willfulness). But an employer defeats a showing of willful deprivation of wages if it shows there was a "bona fide" dispute about whether all or part of the wages were really due. *Schilling*, 136 Wn.2d at 161; *see also Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 301 n.11, 745 P.2d 1 (1987) (listing cases); *Morgan*, 166 Wn.2d at 534 (citing *Pope v. Univ. of Wash.*, 121 Wn.2d 479, 490, 852 P.2d 1055 (1993)).

Under our prior decisions, the burden is on the employer to show the existence of such a bona fide dispute. *Wash. State Nurses Ass'n*, 175 Wn.2d at 834 (citing *Schilling*, 136 Wn.2d at 165).

And under our prior decisions, a bona fide dispute has both an objective and a subjective component. The employer must have a "'genuine belief'" in the dispute at the time of the wage violation. *See Chelan County*, 109 Wn.2d at 301 (quoting *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 500, 663 P.2d 132 (1983)). That is the subjective component. In addition, that dispute must be objectively reasonable— that is, the issue must be "fairly debatable." *Schilling*, 136 Wn.2d at 161; *see Wash. State Nurses Ass'n*, 175 Wn.2d at 836 (examining reasonableness of the dispute over

wages to determine whether the issue was fairly debatable for purposes of RCW 49.52.050(2)). That is the objective component.

Thus, despite the statute's focus on the employer's intent, our decisions state that whether an employer acts "[w]ilfully and with intent to deprive" within the meaning of RCW 49.52.050(2) is really a two-part test with an objective and subjective component. The subjective, genuine belief component is a question of fact that we generally review under the substantial evidence standard. *Schilling*, 136 Wn.2d at 167 (Alexander, J., dissenting) (citing *Pope*, 121 Wn.2d at 490 (citing *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 660, 717 P.2d 1371 (1986))); *State v. O'Connell*, 83 Wn.2d 797, 839, 523 P.2d 872 (1974); *Chelan County*, 109 Wn.2d at 300-01. The objective, "fairly debatable" inquiry is a legal question about the reasonableness or frivolousness of an argument that we review de novo. *See In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 385 P.3d 135 (2016) (reviewing de novo lower court's dismissal of a personal restraint petition as frivolous under RAP 16.11(b)).

B. Garda Failed To Carry Its Burden of Showing the Statutory Bona Fide Dispute Defense to Double Damages Based on Collective Waiver

  *1. The Trial Court Rejected All Four Bona Fide Disputes Proposed by Garda*

At trial, Garda argued that there was a bona fide dispute about whether the Plaintiffs were entitled to vigilance-free meal periods because it questioned

> (1) whether Plaintiffs' meal and rest break claims were preempted by the Federal Aviation Administration Authorization Act ("[FAAAA]"); (2) whether Plaintiffs' meal break claims were preempted by Section 301 of the Labor Management Relations Act ("LMRA"), . . . (3) whether Plaintiffs waived their meal break claims by individually signing acknowledgment forms stating that the employee individually agreed to the terms of the applicable Labor Agreements[, and (4)] whether the Labor Agreements are the type of "CBAs" [Department of Labor & Industries administrative policy] ES.C.6 § 15 is intend[ed] to address [(given that this court questioned the characterization of the plaintiffs' labor agreements as CBAs in *Hill v. Garda CL Nw., Inc.*, 179 Wn.2d 47, 50 n.1, 308 P.3d 635 (2013)].

CP at 3437, 3444. The trial court rejected Garda's claims of a bona fide dispute on all four grounds. CP at 3817-19. With regard to question 1, it found that Garda did not "'genuinely believe[]'" in the FAAAA preemption argument at the time of the wage violation. CP at 3811, 3819. This ruling on question 1 is a factual conclusion. With regard to questions 2 and 3, it rejected Garda's LMRA preemption and individual waiver arguments as objectively unreasonable. CP at 3817-19. The trial court ruled that Garda's LMRA preemption argument was "meritless" because the law was clear that the LMRA does not apply to claims based solely on state statutory

10

and regulatory requirements. CP at 3818-19. As for Garda's argument that the Plaintiffs had individually waived their meal periods when they signed acknowledgements agreeing to be bound by the terms of their respective CBAs, the trial court ruled that that argument was unreasonable because the CBAs on which Garda's individual waiver arguments were predicated did not purport to waive the "'on-duty' meal breaks" that the Plaintiffs were seeking to enforce. CP at 3818. These rulings on questions 2 and 3 are legal conclusions. Finally, the trial court did not provide a reason for rejecting Garda's fourth claim that the labor agreements signed by the workers were not the type of CBAs that are subject to provision 15 of the Department of Labor and Industries' Employment Standard ES.C.6 (2005), which bars waiver of meal period rights in CBAs. Because it made no factual finding on that point, we treat its decision on question 4 as a legal one, not a factual one.

2. *The Court of Appeals Reversed Based on the Bona Fide Dispute Summarized at (4), Above: Whether a CBA Can Waive the State Law Right to Meal Breaks*

The Court of Appeals reversed, finding that Garda did have a bona fide dispute about whether the Plaintiffs waived their state law meal break right in their CBAs— the dispute described as number 4, above. Specifically, that court held that it was fairly debatable whether the Plaintiffs had waived their meal period rights because "the state of the law was not clear" about whether meal period rights could be waived

11

in a CBA, noting specifically that "Garda's interpretation of the Policy [(Employment Standard ES.C.6 (2005))] on this point was not unreasonable." *Hill*, 198 Wn. App. at 363. We reverse.

> 3. *We Reverse; Even If Washington Law Were Unclear about the Waivability of "On Duty" Meal Period Rights through CBAs, Garda Never Argued that the Plaintiffs Waived the "On Duty" Meal Period Right That the Plaintiffs Are Seeking To Enforce*

There was no bona fide dispute about whether the Plaintiffs waived their right to a paid, *on duty* meal period. Indeed, even Garda acknowledges that the Plaintiffs retained the right to a paid, on duty meal period. Instead, Garda argued that the Plaintiffs waived their right to *off duty* meal periods and that they received their *on duty* meal periods. *E.g.*, Garda's Reply to Answer & Cross Pet. for Review at 1-2 ("Garda argued below, as it has consistently throughout this litigation, that the Drivers intentionally and knowingly waived *off-duty* meal periods either in the agreements negotiated by the Drivers Associations or by individually signing the acknowledgments of the same. . . . Garda also argued that there was no wage violation because the Drivers were paid for such on-duty meal breaks." (emphasis added)).

Based on that argument, Garda concludes that because the Plaintiffs were paid for a full day, including the time during which they ate while working, they were given and paid for "on duty" meal periods as required by WAC 296-126-092. *E.g.*,

Suppl. Br. of Pet'r/Cross Resp't Garda, f/k/a AT Systems Inc. at 3 ("Garda maintains that each relevant CBA clause confirmed showed [sic] that the Drivers agreed—and chose—to work [through] meal periods and receive pay. In other words, they agreed to waive the unpaid off-duty meal period requirement contemplated by WAC 296-126-092.").

But that's not what an "on duty" meal period, as contemplated by WAC 296-126-092, is. An "on duty" meal period is one during which the employee is relieved of all work duties—the employee need only remain "on the premises or at a prescribed work site in the interest of the employer." WAC 296-126-092(1).[5]

It is undisputed that Garda failed to provide the Plaintiffs with that type of work-free, "on duty" meal period. And it is precisely that type of work-free, "on duty" meal period on which the Plaintiffs base their claims in this case: the Plaintiffs explicitly claimed that they were deprived of such "on duty" meal periods.

Because there was no argument that the Plaintiffs waived "on duty" (as opposed to "off duty") meal periods in their CBAs, Garda's assertion of a bona fide

---

[5] Regardless of whether it might have been debatable before the *Pellino* decision whether the meal periods the Plaintiffs received qualified as an "on duty" meal period, that debate is not relevant here because the trial court awarded double damages starting after the *Pellino* decision.

dispute based on collective waiver was objectively unreasonable. We therefore reverse the Court of Appeals on the bona fide dispute question (4).[6]

Thus, even without focusing on the specific language of the Plaintiffs' CBAs, we hold that Garda failed to establish a bona fide dispute based on collective waiver because Garda never actually argued there was waiver of the particular type of rights the Plaintiffs sought to enforce here, that is, "on duty" meal periods.

### 4. The Plaintiffs' CBAs Support Their Undisputed Assertion That They Did Not Waive Their "On Duty" Meal Periods in Those Agreements

The specific language of the Plaintiffs' CBAs, however, provides further support for our conclusion that there was no bona fide dispute based on waiver. As detailed below, each of the Plaintiffs' 18 CBAs contained one of three general meal period clauses, all reaffirming that the Plaintiffs had not waived "on duty" meal periods.

The first type of meal period clause stated that driving routes would be scheduled without a designated, prescheduled lunch break and explained that the employees would instead be provided a paid, on duty lunch break. Eight CBAs contained one of three variations of that clause:

---

[6] Given our limited resolution of this case, we do not address whether the Court of Appeals also erred in concluding that the law was unclear as to the waivability of meal period rights in CBAs.

1. Street and ATM (automated teller machines) routes will be scheduled without a designated lunch break; thus employees will not be docked for same. In the event a truck crew on a Street or ATM route wishes to schedule a nonpaid lunch break, they must notify their supervisor. (CP at 390 (2004-09 Mt. Vernon Labor Agreement), 454 (2004-08 Seattle Labor Agreement), 536 (2005-08 Tacoma Labor Agreement).)

2. Street routes as well as ATM routes will be scheduled without a designated lunch break thus employees will not be docked for same. In the event a truck crew on a street or ATM route wishes to schedule a nonpaid lunch break, they must notify their supervisor. (CP at 497 (2007 Spokane Work Rules).)

3. Street routes will be scheduled without a designated lunch break; thus employees will not be docked for same. In the event a truck crew on a street route wishes to schedule a nonpaid lunch break, they must notify their supervisor. (CP at 578 (2009 Wenatchee Labor Agreement), 622 (2006-09 Yakima Labor Agreement), 433 (2006-09 Pasco Labor Agreement),[7] 1513 (2006-09 Wenatchee labor agreement).)

The second type of meal period clause guaranteed the employees a paid on duty meal period and stated that if the employees wanted an unpaid off duty meal period instead, then the employees must make arrangements with their supervisor. Seven of the Plaintiffs' CBAs contained that clause:

The Employees hereto agree to an on-duty meal period. Employees may have an off duty meal period if they make arrangements with their supervisor in advance of the need or provided the supervisor with a

---

[7] The court's photocopy of the 2006-09 Pasco labor agreement is striated and therefore difficult to read, but the parties seem to agree that it contains language consistent with the 2009 Wenatchee and 2006-09 Yakima labor agreements. Opening Br. of Appellant Garda, App. at a; Pls.'/Cross-Pet'rs' Suppl. Br. at 11 n.6.

15

written request to renounce the on-duty meal period in exchange for an off-duty meal period.

CP at 413 (2009-12 Mt. Vernon Labor Agreement), 478 (2008-11 Seattle Labor Agreement), 516 (2008-11 Spokane Labor Agreement), 558 (2009-12 Tacoma Labor Agreement); 1140 (2013-16 Mt. Vernon Labor Agreement), 4239 (2013-16 Seattle Labor Agreement), 1669-70 (2011-14 Spokane Labor Agreement).

The third type of meal period clause purported to waive all meal period rights but then indicated that the employees still had a right to a paid, on duty meal period. Three of their CBAs contained that clause:

> The Employees hereto waive any meal period(s) to which they would be otherwise entitled. Employees will be paid at their regular hourly rate to work through any such meal period(s). Notwithstanding this waiver, employees may eat meals within their vehicles while on route so long as they can do so in a safe manner. Employees may take an unpaid off-duty meal period if they make arrangements with their supervisor at least one day in advance of the need or provide their supervisor with a written request to renounce the on-duty meal period in exchange for an off-duty meal period.

CP at 1163 (2010-13 Pasco labor agreement), 601 (2010 Wenatchee Labor Agreement), 646 (2010-13 Yakima Labor Agreement).

Thus, none of the Plaintiffs' 18 CBAs actually waived their right to an on duty meal period, which is the right the Plaintiffs seek to enforce in this lawsuit.

Garda has therefore failed to carry its burden of showing a bona fide dispute on waiver.

16

## 5. *The LMRA Does Not Bar This Court from Reading the Parties' CBAs, Nor Does It Preempt the Plaintiffs' State Law Claim*

Garda argues that it is impermissible for this court to interpret the language of those agreements, despite the fact that Garda is the party that raised their language as a basis for its bona fide dispute defense. Garda claims that this court is barred from referring to that language because section 301 of the LMRA, 29 U.S.C. § 185(a), preempts the field of labor relations and bars state courts from resorting to the language of a CBA even when analyzing the enforceability of a state law created right. Opening Br. of Appellant Garda at 21-22.

Garda is incorrect. Because Garda raised the language and characterizes it as supporting its argument, this court has a duty to read that language and decide whether Garda is correct about that characterization. As the Ninth Circuit summarized of the holdings of the relevant United States Supreme Court decisions on this point,

> [I]n order for complete preemption to apply, "the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is *plainly based on state law*, § 301 pre-emption is not mandated simply because the defendant refers to the CBA in mounting a defense." [*Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001); *see also Gregory v. SCIE, LLC*, 317 F.3d 1050, 1052 (9th Cir. 2003); *Humble v. Boeing Co.*, 305 F.3d 1004, 1008 (9th Cir. 2002).]

*Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir. 2005) (emphasis added). The Plaintiffs' claims in this case are "plainly based on state law." The fact that Garda

"refers to the CBA in mounting a defense" does not turn it into an LMRA claim. Neither does reading the CBAs themselves.

Garda also argues that if we choose to spend too much time addressing the language of the CBAs that it raised, then the Plaintiffs' claim must be considered fully preempted. This reflects a misunderstanding of the reach of LMRA preemption. As the Court of Appeals said in its discussion of that issue, and in reliance on controlling United States Supreme Court law, "[S]ection 301 preemption does not apply to every dispute between an employer and a union employee. '[I]t would be inconsistent with congressional intent under [section 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, *independent of a labor contract.*'" *Hill*, 198 Wn. App. at 349 (emphasis added) (second and third alterations in original) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985)).

This holding remains good law, and the WAC on which the Plaintiffs rely is a state rule that prescribes rights "independent of a labor contract."

Garda argues one final aspect of LMRA preemption. It contends that "the Plaintiffs' claims stem from negotiable rights, which they have waived in their CBAs." *Id.* at 351. And Garda is correct that in the line of cases in which the United States Supreme Court "has sought to preserve state authority in areas involving

18

minimum labor standards," *Valles*, 410 F.3d at 1076, that court has said that "[section] 301 [of the LMRA] cannot be read broadly to pre-empt *nonnegotiable rights* conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994) (emphasis added). Garda relies on this premise to argue the converse, i.e., that the meal period protection at issue here was a *negotiable* right and, hence, the LMRA preempted the Plaintiffs' claims and the Plaintiffs lack the ability to make any argument that the CBA actually preserved their negotiable right.

But a CBA cannot waive the employees' right to the protection of even a *negotiable* state law right unless it does so in "clear and unmistakable language." As the Ninth Circuit recently explained, in a passage relying solely on controlling United States Supreme Court law:

> Finally, we have held that "§ 301 does not permit parties to waive, in a [CBA], nonnegotiable state rights" conferred on individual employees. *Balcorta* [*v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1111 (9th Cir. 2000)]. As the Supreme Court has repeatedly emphasized, "Congress is understood to have legislated against a backdrop of generally applicable [state] labor standards." *Livadas*, 512 U.S. at 123 n. 17, 114 S.Ct. 2068. Section 301 must not be construed to give employers and unions the power to displace state regulatory laws. *See Cramer*, 255 F.3d at 697; *Humble*, 305 F.3d at 1009; *Associated Builders & Contractors, Inc.* [*v. Local 302 Int'l Bhd. of Elec. Workers*], 109 F.3d [1353, 1357-58, *amended and superseded on reh'g*, 1997 WL 236296 (9th Cir. 1997)]. Where, however, under state law waiver of state rights may be permissible, "the CBA must include 'clear and unmistakable' language waiving the covered employee's

state right 'for a court even to consider whether it could be given effect.'" *See Cramer*, 255 F.3d at 692 (quoting *Livadas*, 512 U.S. at 125, 114 S.Ct. 2068).

*Valles*, 410 F.3d at 1076 (footnote omitted). We agree.

Thus, even if Washington's state law meal period protection is considered collectively negotiable—a question we do not reach—the language in the Plaintiffs' CBAs on which Garda relies certainly did not waive that protection in clear and unmistakable language. As discussed above, the agreements did not waive the protection of true on duty meal periods at all. Instead, as Garda acknowledges, the CBAs retained the protection of true on duty meal periods. Thus, it was unreasonable for Garda to claim a bona fide dispute based on waiver.[8]

---

[8] Contrary to the dissent's concerns, our holding in this case does not disturb our rulings in *Champagne v. Thurston County*, 163 Wn.2d 69, 82, 178 P.3d 936 (2008), and *Washington State Nurses Ass'n*. Those cases state that "[g]enerally, an employer who follows the provisions of a CBA 'with respect to overtime wages and compensatory time' does not willfully deprive employees of wages or salary.'" *Wash. State Nurses Ass'n*, 175 Wn.2d at 834 (quoting *Champagne*, 163 Wn.2d at 82). As detailed above, the CBAs in this case guaranteed the Plaintiffs an on-duty meal period, which the Court of Appeals held they did not receive. Thus, we do not address the Plaintiffs' fallback argument that even if the CBAs had waived their meal period rights under WAC 296-126-092, Garda could not rely on such waiver as a defense to double damages because the Department of Labor and Industries' Administrative Policy ES.C.6 (2005) bars waiver of meal period rights in CBAs.

C. Garda's "Knowing[] Submi[ssion]" Defense and Its Other Bona Fide Dispute Defenses Should Be Addressed on Remand

Given our limited grant of review, we remand to the Court of Appeals to address Garda's remaining statutory defenses to double damages, including whether there was a bona fide dispute based on FAAAA preemption and whether the Plaintiffs knowingly submitted to Garda's meal period violation. RAP 13.7(b); *Hill*, 198 Wn. App. at 364.

II.    Workers May Recover Both Double Exemplary Damages under RCW 49.52.070 and Prejudgment Interest under RCW 19.52.010 for the Same Wage Violation

The trial judge awarded the Plaintiffs back wages from 2006 to 2015 for the vigilance-free meal periods and rest breaks of which they were deprived. CP at 3808, 3814-17. It also awarded double exemplary damages from 2011[9] to 2015. CP at 3821. Finally, it awarded prejudgment interest, but only on the back wages, not on the double exemplary damages. CP at 3822. Garda does not dispute the Plaintiffs' ability to recover prejudgment interest for the type of wage claims raised here. *See Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 50, 169 P.3d 473 (2007) (classifying judgments for back wages as liquidated and therefore eligible for

---

[9] The year of the *Pellino* decision.

prejudgment interest (citing *Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986))). Instead, Garda argues that the Plaintiffs cannot recover both prejudgment interest and double exemplary damages for the same wage violation; Garda argues that would constitute impermissible double recovery. The Court of Appeals agreed and reversed the portions of the trial court's prejudgment interest award granting double exemplary damages for the same wage violation. *Hill*, 198 Wn. App. at 364-66.

Whether an award of double exemplary damages under RCW 49.52.070 and an award of prejudgment interest result in an impermissible double recovery is a question of statutory interpretation that we review de novo. *Spivey v. City of Bellevue*, 187 Wn.2d 716, 726, 389 P.3d 504 (2017) (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001)).

To answer this question, we must consider whether the harms compensated by RCW 49.52.070, the double damages statute, and RCW 19.52.010, the prejudgment interest statute, overlap.

They do not. RCW 49.52.070 awards employees "twice the amount of the wages unlawfully rebated or withheld by way of *exemplary* damages" when the employer withholds such wages willfully and with intent to deprive. (Emphasis added.) "Exemplary damages" are synonymous with punitive damages. BLACK'S

LAW DICTIONARY 692 (10th ed. 2014) (equating "exemplary damages" with "punitive damages"). Exemplary damages under RCW 49.52.070 are therefore designed to "punish and deter" an employer's blameworthy conduct, not to compensate the worker for harm caused by such conduct. *Morgan*, 141 Wn. App. at 161-62 (citing BLACK'S LAW DICTIONARY 418-19 (8th ed. 2004)).

By contrast, prejudgment interest under RCW 19.52.010 is designed to repay the plaintiff for the "'use value'" of the money that the plaintiff never received. *Hansen*, 107 Wn.2d at 473 (quoting *Mall Tool Co. v. Far W. Equip. Co.*, 45 Wn.2d 158, 177, 273 P.2d 652 (1954)). "Prejudgment interest awards are based on the principle that a defendant 'who retains money which he ought to pay to another should be charged interest upon it.'" *Id.* (quoting *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 34, 442 P.2d 621 (1968)). The availability of prejudgment interest does not depend on the willful intent of the employer; instead, it depends on whether the claim is liquidated. *Id.* at 472. A claim is "liquidated" for purposes of triggering prejudgment interest "'where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion.'" *Id.* (quoting *Prier*, 74 Wn.2d at 32). If a claim is liquidated, then Washington courts will treat the claim as if it were a loan made to the defendant and compensate the plaintiff for the loss of use of that money.

Because the compensatory function of prejudgment interest and the punitive function of exemplary damages are different, there is no bar on awarding both for the same underlying wage violation.

Garda's reliance on federal cases applying the federal double liquidated damages provision of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 216(b), is unavailing. Although both the federal and state provisions entitle workers to double damages when their employer unlawfully withholds wages and both are silent as to the availability of prejudgment interest, the similarities between the two provisions end there.

The federal provision was enacted in 1938[10]—a year before Washington adopted our double damages provision.[11] The federal provision entitles the plaintiff to double damages "as *liquidated* damages" when the employer violates certain federal wage and hour laws. 29 U.S.C. § 216(b) (emphasis added).[12] By contrast,

---

[10] 52 Stat. 1069 (1938).

[11] LAWS OF 1939, ch. 195, § 3.

[12] Section 216(b) provides in pertinent part:

Any employer who violates the provisions of section 206 [(titled "Minimum wage")] or section 207 [(titled "Maximum hours")] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as *liquidated damages*. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff

24

RCW 49.52.070, which was enacted a year later, contains different language. It restricts the recovery of double damages to instances where the employer unlawfully collects or receives a rebate of wages or unlawfully withholds wages "[w]ilfully and with intent to deprive the employee of any part of his or her wages." RCW 49.52.070, .050(2). In those limited instances, RCW 49.52.070 authorizes double damages to be awarded "by way of *exemplary damages*."[13]

This distinction between double damages as "*exemplary* damages" under RCW 49.52.070 and double damages as "*liquidated* damages" under 29 U.S.C. § 216(b) is significant.

---

> or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b) (emphasis added). That language has remained the same since its enactment in 1938. *Compare* 29 U.S.C. § 216(b), *with* 52 Stat. 1069.

[13] RCW 49.52.070 provides:

> Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of RCW 49.52.050 (1) [(rebate of wages)] and (2) [(willful and intentional deprivation)] shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of *exemplary* damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.

(Emphasis added.) Like its federal counterpart, RCW 49.52.070 has remained substantially the same since its enactment in 1939. *Compare* RCW 49.52.070, *with* LAWS OF 1939, ch. 195, § 3.

Unlike Washington's prejudgment interest law which uses "liquidated damages" to refer to readily calculable damages, the FLSA uses "liquidated damages" as an approximation for actual damages where the damages are "too obscure and difficult of proof" to calculate. *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942); *see also Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 709, 65 S. Ct. 895, 89 L. Ed. 1296 (1945). Liquidated damages under the FLSA are therefore "compensation, not a penalty or punishment by the Government." *Overnight Motor*, 316 U.S. at 583. For that reason, the United States Supreme Court has held that prejudgment interest is not available in addition to double damages under the FLSA since the double damages provision already compensates the employee for the delay in wages. *Brooklyn Sav. Bank*, 324 U.S. at 715. To hold otherwise, the Court explained, would "produce the undesirable result of allowing interest on interest." *Id.* (citing *Cherokee Nation v. United States*, 270 U.S. 476, 490, 46 S. Ct. 428, 70 L. Ed. 694 (1926)).

No such "interest on interest" problem results under RCW 49.52.070 because our state double damages statute is designed to "punish and deter" employers from unlawfully demanding a rebate in wages or unlawfully withholding wages willfully and with an intent to deprive. *Id.* Federal case law interpreting the FLSA is therefore not persuasive.

The Court of Appeals' reliance on *Ventoza v. Anderson*, 14 Wn. App. 882, 545 P.2d 1219 (1976)—a timber trespass case—is likewise misplaced. In *Ventoza*, a plaintiff landowner was harmed when the defendant cut 16 acres of trees belonging to the plaintiff without his permission. *Id.* at 886. The trial court awarded the plaintiff treble damages under RCW 64.12.030 plus prejudgment interest. *Id.* at 897. The *Ventoza* court reversed the prejudgment interest award. It held "that when a plaintiff elects to seek recovery under the treble damage section, only three times the value of the trees wrongfully cut may be recovered, and interest may not be granted upon either the compensatory or the punitive portion of the award." *Id.* (citing *Rayonier, Inc. v. Polson*, 400 F.2d 909, 922 (9th Cir. 1968)). In reaching this rule, the *Ventoza* court relied primarily on the Ninth Circuit's *Rayonier* decision. The Ninth Circuit, in turn, relied primarily on this court's decision in *Blake v. Grant*, 65 Wn.2d 410, 413, 397 P.2d 843 (1964), and on the general rule that punitive remedies must be strictly construed and not extended by implication. *Rayonier*, 400 F.2d at 922. We find neither rule applicable in this nontimber wage context.

As the Ninth Circuit acknowledged, *Blake* "never held" that prejudgment interest is unavailable on the *compensatory* portion of a damages award. *Id. Blake* merely stated that "interest is generally disallowed on *punitive* damages." *Blake*, 65

Wn.2d at 413 (emphasis added) (citing 15 AM. JUR. *Damages* § 299 (1938)).[14] Indeed, several other jurisdictions expressly allow prejudgment interest on the compensatory portion of a damages award but deny it on the punitive portion of the award. *See, e.g., Matanuska Elec. Ass'n v. Weissler*, 723 P.2d 600, 610 (Alaska 1986) ("[P]rejudgment interest may be awarded on the compensatory portion but not on the punitive portion of the award." (citing *Andersen v. Edwards*, 625 P.2d 282, 289-90 (Alaska 1981))); *Salvi v. Suffolk County Sheriff's Dep't*, 67 Mass. App. Ct. 596, 608-09, 855 N.E.2d 777 (2006) (upholding award of prejudgment interest on back pay but not on punitive damages). Like these jurisdictions, the trial court in this case awarded prejudgment interest on only the compensatory portion of their damages award, not the punitive, double damages award. CP at 3821 (awarding "prejudgment interest . . . on the back pay owed"). The trial court did not award prejudgment interest on the exemplary double damages.

We hold that RCW 49.52.070 does not bar recovery of prejudgment interest on the compensatory portion of the Plaintiffs' damages award.

---

[14] That referenced portion of section 299 states that "[i]nterest is not recoverable in statutory actions for double or treble damages." 15 AM. JUR. *Damages* § 299.

CONCLUSION

Garda failed to prove a bona fide dispute based on the purported waiver of Plaintiffs' state law right to on duty meal breaks in their CBAs. In addition, the Plaintiffs can recover both double exemplary damages under RCW 49.52.070 plus prejudgment interest under RCW 19.52.010 for the same wage violation. We therefore reverse and remand to the Court of Appeals for further proceedings consistent with this opinion.

No. 94593-4

_George McCloud, J._

WE CONCUR:

_____

_____

_Madsen, J._

_Stephen, J._

_Wiggins, J._

_González, J._

_Yu, J._

30

*Hill v. Garda CL Nw., Inc.*

No. 94593-4

JOHNSON, J. (concurring in part/dissenting in part)—While the majority correctly concludes that, in general, a plaintiff may recover both prejudgment interest under RCW 19.52.010 and double damages under RCW 49.52.070, on the facts of this case, Garda CL Northwest Inc. did not willfully withhold wages and thus double damages are inappropriate.

Garda and its employees entered a collective bargaining agreement (CBA) establishing working conditions justified by the nature of the employment: an armored truck service where employees are armed and transporting valuable cargo. Given the nature of their occupation, Garda employees must be alert and attentive the entire time they are at work.

The language in the CBAs is clear: "Employees hereto waive any meal period(s) to which they would otherwise be entitled" (Clerk's Papers (CP) at 601 (2010 Wenatchee Labor Agreement), 646 (2010-13 Yakima Labor Agreement)) and truck routes "will be scheduled without a designated lunch break" (CP at 390 (2004-09 Mt. Vernon Labor Agreement), 433 (2006-09 Pasco Labor Agreement), 497 (2007 Spokane Work Rules), 536 (2005-08 Tacoma Labor Agreement), 578 (2009 Wenatchee Labor Agreement), 622 (2006-09 Yakima Labor Agreement)). Even though Garda was ultimately held liable for unpaid wages, it was not

unreasonable for Garda to perceive this language as a clear waiver of employees' meal periods and not merely an agreement to on-duty meal periods. Because liability for wages is not at issue, whether these words constituted actual waiver is not at issue. Instead, the focus is on Garda's state of mind and whether its actions were willful for purposes of double damages.

Even in the few CBAs stating, "Employees hereto agree to an on-duty meal period," that language cannot be read out of context. CP at 202 (2004-08 Seattle labor agreement), 558 (2009-12 Tacoma Labor Agreement). The employee handbook explicitly states that drivers must remain "alert at all times" while working. CP at 1791, 1792. Drivers also testified that constant alertness was part of the job. Even some of the CBAs recognize that the requirement of constant alertness dovetails with employees' breaks. CP at 601 (2010 Wenatchee Labor Agreement). Considering the CBAs, the employee handbook, and driver testimony, there should be no question that drivers understood the need for a constant state of vigilance when they agreed to work for Garda. Thus, it was not unreasonable for Garda to interpret this section of the CBA as an agreement to work through meal periods.

In holding that Garda willfully withheld wages, the majority fails to recognize our precedent in *Champagne v. Thurston County*, 163 Wn.2d 69, 82, 178 P.3d 936 (2008) and *Washington State Nurses Ass'n v. Sacred Heart Medical Center*, 175 Wn.2d 822, 834, 287 P.3d 516 (2012). "Generally, an employer who

2

follows the provisions of a CBA 'with respect to overtime wages and compensatory time' does not willfully deprive employees of wages or salary." *Wash. State Nurses Ass'n*, 175 Wn.2d at 834 (quoting *Champagne*, 163 Wn.2d at 82). Here, Garda operated according to the CBAs signed by its employees—given the nature of the job, there were no scheduled meal breaks and employees needed to remain vigilant at all times while working. When there is an agreement and the employer pays wages based on that agreement, as Garda did here, such action negates a finding of willfulness. *Champagne*, 163 Wn.2d at 82. Furthermore, the plaintiffs have presented no evidence of deception or bad faith surrounding the creation of the CBAs.

Until today, under certain circumstances, employers and employees could waive statutorily required rest and lunch breaks as long as an employment agreement existed that provides adequate compensation for forgoing what the statute otherwise required. *Iverson v. Snohomish County*, 117 Wn. App. 618, 622, 72 P.3d 772 (2003) (affirming summary judgment for the employer because the employee "failed to produce any evidence that the reality of his employment contradicts the collective bargaining agreement" stating that he would need to perform tasks during meal breaks). The majority's decision undermines the right of employees to bargain collectively with their employers. Under the majority's decision, CBAs arguably are no longer binding agreements, and neither employers nor employees will have any incentive to adhere to their terms.

3

That Garda followed the terms of the CBA is sufficient to negate a finding of willfulness; the Court of Appeals should be affirmed.

Johnson, J.

Owens, J.

Fairhurst, C.J.