IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DAVID GEORGE ESSIG,<br><br>Respondent,<br><br>v.<br><br>MICHAEL LAI AND VEENY VAN, individually and the marital community comprise thereof; MICHAEL LAI d/b/a ML COMPANIES, INC., ML COMPANIES, LLC, a Washington limited liability company; USASIA PACIFIC INC., a Washington corporation ; PT HOLDING LLC, a Washington limited liability company; REALITY NETWORK TEAM, INC., a Washington corporation; SEATTLE MODERIN LIVING, LLC, a Washington limited liability company; SEATTLE MODERN LIVING ON 35TH LLC, a Washington limited liability company; and JOHN DOE COMPANIES, INC. 1-5,<br><br>Appellants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 78014-0-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>FILED: July 8, 2019 |

HAZELRIGG-HERNANDEZ, J. — This case requires us to decide whether the wage rebate act (WRA)[1], authorizes exemplary damages against an employer who fails to pay wages pursuant to a contract when the employee has not performed the actual work. David G. Essig stopped working for Michael Lai when Lai failed to pay him as required in their employment contract. Because the WRA is construed liberally to protect workers, the pay to which Essig was entitled under

---

[1] Chapter 49.52 RCW

the contract constituted wages. We hold Essig is entitled to exemplary damages. Affirmed.

FACTS

David Essig began working for the Rainier Valley Community Development Fund (CDF) in 2006. Essig managed the real estate investment portion of the fund to create revolving loans and attract development and funds to the Rainier Valley. Through his work with the CDF, Essig met Michael Lai. Lai managed a real estate brokerage. Essig worked with Lai's firm on two successful loan transactions. From the first time they met, Lai periodically approached Essig about working for him. Initially, Lai spoke to Essig about becoming a real estate agent, but Essig was not interested.

In the fall of 2014, Essig and Lai began to talk about Essig working for Lai in a development capacity. Lai wanted to know if Essig would be willing to partner with him on the developments, but Essig did not have the financial capacity to partner on large scale developments. Lai then asked Essig to consider working as a consultant or independent contractor, but Essig was not interested in working as an independent contractor. Essig stated that his interest was in working as a key employee to build the development organization. Lai asked Essig to draft a proposal for Essig to begin working for him.

On May 29, 2015, Essig entered into an employment agreement with Lai and a number of business entities under Lai's control. Lai agreed to employ Essig for a minimum of two years, with an annual salary of $114,000, health and dental benefits for Essig and his spouse, an expense account, office space, office

2

support, and a $5,000 signing bonus. Lai gave Essig a $5,000 check, which Essig successfully deposited. Essig was to start work on July 13, 2015. He resigned from the Rainier Valley Community Development Fund in reliance on the employment agreement.

Essig began performing his duties under the employment agreement on July 13, 2015. Over several weeks, he worked in the field reviewing projects, attending meetings and site visits with Lai, meeting with Lai, and engaging in phone, email, and text message communication with Lai regarding the business. At no point did Lai indicate that Essig was not employed by Lai.

On July 30, Essig emailed Lai requesting medical insurance and benefits for Essig and his wife, as provided in the employment agreement. On August 18, Essig sent Lai a letter demanding payment of his wages and benefits to that date. Essig continued to work for Lai until August 26.

Throughout August, Lai suggested changes to the employment agreement, but did not deny the existence of the employment agreement or employment relationship. Lai continued to involve Essig in meetings, phone calls, and communications regarding the business.

On August 27, Essig notified Lai that he considered Lai in breach, he was stopping work on Lai's behalf, and would seek other employment. Lai sent the following text message on August 28: "I can take care $120,000.000 per year next 12 months. Then become employees after that." Essig interpreted that message as an offer to work as an independent contractor. Essig engaged in efforts to find

comparable replacement employment, searching in Seattle, Oklahoma City, and other locations nationwide. Essig filed suit.

The court found Lai in breach of contract, and awarded Essig lost wages of $228,000, exemplary damages of $228,000 under the WRA, $13,263 in medical benefits, attorney fees of $85,890, and $708.28 in costs. Lai appeals the award of exemplary damages and the court's finding that Essig reasonably mitigated his damages.

## DISCUSSION

I.    Lai is liable for exemplary damages under the WRA

Under RCW 49.52.050 and .070, employers who pay any employee a lower wage than the employer is obligated to pay, are liable for exemplary damages equal to the unpaid wages. Hill v. Garda CL NW, Inc., 191 Wn.2d 553, 561, 424 P.3d 207 (2018). The employer must withhold the wages willfully, intend to deprive the employee of his or her wages, and the employee must not knowingly submit to the violations. Id. at 561.

The trial court found for Essig on each factor. Lai does not challenge those findings of fact. Instead, Lai challenges whether the money owed to Essig counts as a wage under the statute, and whether he proved a bona fide dispute regarding his obligation to pay those wages.

A.    Money owed under an employment contract is wage for purposes

of the WRA

Questions of statutory interpretation are reviewed de novo. Id. at 573. The goal of statutory interpretation is to give effect to the legislature's intent. Columbia

4

Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 435, 395 P.3d 1031 (2017). We begin with the plain meaning of the statute, which includes the text of the provision, the context of the statute, related provisions, and the statutory scheme as a whole. Id. at 435.

The purpose of the WRA is to "protect the wages of an employee against any diminution or deduction." Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 159, 961 P.2d 371 (1998) (quoting State v. Carter, 18 Wn.2d 590, 621, 140 P.2d 298 (1943)) (emphasis omitted). The WRA must be liberally construed to protect employee wages and assure payment. Id. at 159.

The WRA does not define wage, but a related statute, the Washington Minimum Wage Act (MWA)[2], defines wage as "'compensation due to an employee by reason of employment.'" LaCoursiere v. Camwest Dev. Inc., 181 Wn.2d 734, 742, 399 P.3d 963 (2014) (quoting RCW 49.46.010(7)). The plain language of RCW 49.52.050, authorizes liability against an employer that pays less than the "employer is obligated to pay. . . by any statute, ordinance or contract[.]"

The trial court found an employment contract between Essig and Lai. That contract entitled Essig to payment. Lai argues that those payments are not wages under the statute because Essig did not actually perform work to earn the wages. He relies on LaCoursiere, where the court held that bonuses paid for "work performed" constituted wages. Id. at 741. LaCoursiere, the plaintiff, received a discretionary bonus based on work performance criteria, some of which was distributed to an LLC owned by the plaintiff and his employer. Id. at 738-39. In

---

[2] Chapter 49.46 RCW

5

order to determine whether or not the money distributed to the LLC was an unlawful rebate, the court first had to determine whether the bonuses were wages. Id. at 741. The court considered the definition of wage used in the MWA, "compensation due to an employee by reason of employment," and the definition found in Webster's, "a pledge or payment of usu. monetary remuneration by an employer esp. for labor or services . . . often including bonuses." Id. at 741-42 (quoting RCW 49.46; WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2568 (2002)). After also considering cases where bonuses were paid for reasons other than employment and cases where future bonuses were promised, the court determined that the bonuses paid to the plaintiff "were due by reason of employment" and therefore wages. Id. at 743.

Lai argues that because LaCoursiere held that bonuses paid for work performed were wages, it suggests that payments unrelated to work performed are not wages. But LaCoursiere did not consider that question, and Lai's reading contradicts the "by reason of employment" language used to describe wages in LaCoursiere. Id. at 742. It also contradicts the plain language of the statute: the WRA refers to the employer's obligation to pay, not the employee's obligation to work. The salary Lai was obligated to pay to Essig was by reason of his employment.

In Gaglidari v. Denny's Restaurants, Inc., our Supreme Court rejected a similar argument regarding the meaning of the term wages in a related statute, RCW 49.48.030. 117 Wn.2d 426, 448, 815 P.2d 1362 (1991). RCW 49.48.030 provides for a plaintiff's recovery of attorney fees in a successful action to recover

wages or salary. The court held Gaglidari was employed based on a contract. Id. at 433. Gaglidari alleged that she was terminated in breach of her employment contract. Id. at 430. While the court remanded the case for resolution, it held that Gaglidari could recover attorney fees if she recovered back pay from the time she was terminated. Id. at 451. Denny's argued that "back wages" were not "wages owed" because they were not for work actually performed. Id. at 448-49. The court held that "[l]ost wages damages [were] in lieu of compensation for services[,]" the statute included not only wages for work actually performed but also "money due by reason of employment[,]" and attorney fees were recoverable under the statute in actions for breach of employment contracts. Id. at 449-50.

Lai attempts to distinguish Gaglidari's interpretation of RCW 49.48.030. Lai argues that RCW 49.48.030 is a remedial statute. On the other hand, because RCW 49.52.050 could result in a misdemeanor charge, he argues the WRA is a punitive statute, and should be construed more narrowly. The Supreme Court has held that RCW 49.48.030 is a remedial statute, meant to be construed liberally for the purpose of protecting employees' rights. Arnold v. City of Seattle, 185 Wn.2d 510, 521, 374 P.3d 111 (2016) (citing Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 146 Wn.2d 29, 34, 42 P.3d 1265 (2002) (collecting cases)). But the court has also held that the WRA must be liberally construed to protect employee wages and assure payment. Schilling, 136 Wn.2d at 159. Because both statutes must be construed liberally and share essentially the same purpose, there is no reason to define wage differently in each statute.

7

Finally, in Allstot v. Edwards, Division III of this court considered a similar question regarding the meaning of wages in RCW 49.52.050. 114 Wn. App. 625, 60 P.3d 601 (2002). In that case, after a police officer had been wrongfully terminated from his job and reinstated, the town failed to pay him for the time he was terminated. Id. at 629-30. The trial court ruled that exemplary damages under the WRA did not apply to back pay because the officer did not actually perform work while he was wrongfully terminated. Id. at 632-33. Division III held that wages included back pay because the language of RCW 49.52.050 did not contain any such limit on wages, the statute must be construed to protect employee wages, and other cases, including Gaglidari, had construed wages to include back pay. Id. at 633. Lai's argument is similarly based on the fact that Essig did not perform the work. We reject his argument on the same basis.

Essig's circumstances are analogous to the wrongful termination in Allstot. Essig had a right to employment and pay under the contract. Lai failed to pay him. Based on the language of RCW 49.52.050, the purpose of the statute, the definition of wage in the MWA, and the above precedents, we hold that pay under an employment contract constitute wages for the purpose of the WRA and affirm the award of exemplary damages.

B.      Lai failed to establish the statutory bona fide dispute defense.

An employer can defeat a showing of willfulness by demonstrating a bona fide dispute regarding whether the wages were due. Hill, 191 Wn.2d at 561 (citing Schilling, 136 Wn.2d at 160). The employer bears the burden of proof regarding the bona fide dispute. Id. at 562.

8

The bona fide dispute defense requires the employer to have a genuine belief in the dispute and for the dispute to be objectively reasonable. Id. at 562. The subjective, genuine belief component is a question of fact, reviewed for substantial evidence. Id. at 562. The objective reasonableness of the argument is a legal question reviewed de novo. Id. at 562.

We affirm because Lai failed to show a subjective belief in a genuine dispute. The absence of a finding of fact is equivalent to a finding of its absence. Garcia v. Henley, 190 Wn.2d 539, 545, 415 P.3d 241 (2018). While the trial court does not explicitly find that Lai lacked a subjective belief in the dispute, the court found Lai failed to meet his burden of proof and lacked credibility. Lai understood that the contract obligated him to pay Essig wages. While Lai testified that he signed the contract under the influence of alcohol and under pressure from Essig, the trial court did not find him credible. Given the findings, the absence of an affirmative finding that Lai had a subjective belief in the dispute, and Lai's burden of proof, we affirm the trial court's implicit finding that Lai failed to establish a subjective belief in the dispute.

II.    Lai did not demonstrate that Essig failed to take reasonable steps to mitigate his damages

The burden of proving a failure to mitigate damages is on the defendant. Kloss v. Honeywell, Inc., 77 Wn. App. 294, 301, 890 P.2d 480 (1995) (quoting Burnside v. Simpson Paper Co., 66 Wn. App. 510, 529-30, 832 P.2d 537 (1992)). Where an employee has been unlawfully discharged he must be "reasonably diligent in seeking and accepting . . . substantially equivalent [employment]." Id. at

302 (quoting <u>Brady v. Thurston Motor Lines, Inc.</u>, 753 F.2d 1269, 1273-78 (4th Cir. 1985)). Essig testified that on August 28, 2015, Lai offered for him to work for Lai as an independent contractor for one year at a salary of $120,000. Lai argues that Essig was obligated to accept his offer and because Essig did not accept that offer, Essig failed to mitigate his damages by $120,000. The actual text of the message from Lai read "I can take care $120,000.000 per year next 12 months. Then become employees after that." The trial court did not find Lai credible at trial, and the oral ruling suggests that the court did not find his offer to be credible, either. The trial court found Essig was not offered employment between August 27, 2015 and June 30, 2017. To the extent that Lai's message constituted an offer, we do not find it comparable to the position described in the contract, and affirm the judgment of the trial court.

This court may affirm the judgment of the trial court on any theory established by the pleadings and supported by the proof. <u>State v. Smith</u>, 177 Wn.2d 533, 540-41, 303 P.3d 1047 (2013). Here, substantial evidence shows that the new position was not equivalent to the position Lai and Essig agreed to in the previous contract. While Lai argues that $120,000 per year is roughly equivalent to $114,000 per year plus benefits, he ignores the difference between status as an independent contractor and status as an employee. We can see how important that distinction was to Essig, because significant testimony shows that he bargained for employee status, even though Lai attempted multiple times to hire him as an independent contractor. It also ignores factors like providing Essig with

office space, office support, expenses, vacation, or an opportunity for bonuses, all of which were present in the original agreement.

Because substantial evidence shows the offer was not a similar position, Lai did not demonstrate that Essig failed to mitigate his damages.

Affirmed.

WE CONCUR: